A. L. CHADWELL, et al., v. W. J. CHADWELL, et al.

Eastern Section.    October 22, 1927.

Petition for Certiorari denied by Supreme Court, March 17, 1928.

C. A. Templeton, of Jellico, and E. H. Powers, of Jacksboro, for appellant.

H. B. Brown and H. K. Trammell, of Jellico, and H. G. Murray, of Jacksboro, for appellee.

SNODGRASS, J. The bill in this cause was filed for a settlement and distribution of the estate of Samuel H. Chadwell, deceased, and, incidentally, to set aside a deed made in the lifetime of the deceased to the 100 acre home tract executed to his son W. J. Chadwell and a granddaughter named Nellie Chadwell.

The said Samuel H. Chadwell had six children, as follows: Alvis Chadwell, Ollie Lambdin, (nee Chadwell) Martha Pennington, (nee Chadwell) Margaret Siler, (nee Chadwell) who was deceased, leaving as her heirs Clellie Siler, Rose Casey, (nee Siler) John Siler, Duff Siler, Judie Siler, and Nancy Ausban, (nee Siler) who died, leaving a child by the name of Margaret Ausban. The other two of these children were W. J. Chadwell and Laura Chadwell. The latter two children were living with the old folks at the time of their death, the said Laura having a child, being the granddaughter, Nellie Chadwell, to whom with the son W. J. the home tract was deeded during the lifetime of Samuel H. Chadwell.

The bill also sought to recover and have declared as distributable certain funds of the deceased which it maintained had been appropriated by the said son, W. J. Chadwell, and who, it was averred, declined to turn it over to the administrator, A. L. Chadwell. The deed was attacked as having been obtained through misrepresentations and undue influence over the deceased, who was alleged to be old and infirm; and it was averred that the said W. J. Chadwell during the time was doing the business of the said deceased and for several years prior to his death had transacted all the business in his own name,

treating the properties and moneys concerned as his own, deposited the same in his own name in the banks, and used and handled the same as his own. And it was averred that when the said Samuel H. Chadwell died there was on hand a large sum of money collected and deposited in this manner belonging to the said deceased, but that defendant W. J. Chadwell now claimed to own the same individually and would not turn the same or any part of it over to complainants or to the administrator. It was averred that some of said money was on deposit in the first National Bank of Jellico, some in the Jellico Bank & Trust Company, and in the Union Bank, which banks, with others, were made parties for the purpose of impounding or securing the funds. It was averred that complainants and the defendants W. J. and Laura Chadwell were the heirs at law of the said S. H. Chadwell, setting out the names and interest of the parties, some of the interested parties being minors and suing through their next friend, Ollie Lambdin. Alvis Chadwell complained also as administrator. An accounting was sought and the money in the hands of the banks and defendant W. J. Chadwell impounded, and they were enjoined from paying the same over or disposing of the funds until the further orders of the court. It was thereupon prayed that at the final hearing complainants be granted a decree for all moneys and properties belonging to the said Samuel H. Chadwell, deceased, and that the same be distributed among them according to the laws of descent and distribution, and that said deed be declared a cloud upon their title and removed by decree of cancellation and annulment, and for such other, further and general relief as they might be entitled to on the facts of the cause.

It is unnecessary to notice the issues with reference to the banks, who answered that they did not have any money in their hands, with the exception of one bank, the First National Bank, with which only funds were located. This latter bank answered and disclosed the funds on hand $—— at the date specified, which it was disclosed was deposited in the name of W. J. Chadwell, and there was injunction against their disposition.

The other defendants answered denying any fraud or imposition in procuring the deed, and averring that the funds derived from the sale of timber and coal by the deceased from his lands had been given to W. J. Chadwell, as well as the land described in the deed, which was conveyed as therein indicated. And while the answers claimed no contract with the deceased for services, under which title was asserted, either to the home tract or the funds, it set out the fact that the other children had moved off and left the old roof tree and set up homes of their own many years before, and that these two defendants, remaining single, had stayed on with and caring for the old folks until their death, through many years of kindly ministration and affection, averred more as a reason for the preferential generosity

of the deceased rather than as compensation for services which he was intending by his action to compensate.

It also appears that during the progress of this cause in a suit filed previously by George W. Fortner et al. v. S. H. Chadwell, deceased, which had been revived, the specific performance of a sale of a 411 acre tract was ordered, and that in lieu thereof there came into the estate the sum of $8000 as the purchase price of this tract, and that $7800 of the fund, presumably the remainder after costs, had been received by the parties, $1300 each as distributive share.

An amended bill was filed, averring that before original complainants could arrange to impound such as was coming to Laura and W. J. Chadwell the fund was distributed, each receiving the sum of $1300. It was averred that the deceased S. H. Chadwell undertook to deed and would have deeded said 411 acre tract or its proceeds to all of his children except W. J. Chadwell, but was thwarted by the fraud of said W. J. Chadwell, who was manager of said S. H. Chadwell's business and affairs, who declined to have such deed drawn according to desire and instructions of his said father, S. H. Chadwell, deceased; that said deed to W. J. Chadwell and Nellie Chadwell to said 100 acre home place was made on the understanding and consideration that the other children, exclusive of W. J. Chadwell, should have the 411 acre tract or its proceeds, and the defendant W. J. Chadwell, who had control of his father's business, caused him to execute a deed to the 100 acre home place to himself, and fraudulently kept his father from executing the deed to the 411 acre tract to the other children; and that said W. J. Chadwell is not and was not entitled to share in said $8000 fund, and ought to be required to disgorge same in this suit for the benefit of the other children, and on its failure it should be paid by order of the court out of the moneys impounded in this cause. So it was prayed, as additional prayer to the original bill, that complainant if in anywise mistaken in this prayer, pray in the alternative for a decree against defendant W. J. Chadwell for the portion of said $8000, to-wit, $1300 and interest, which he received, and that same be satisfied out of the moneys impounded in this cause.

It was ordered that the answer be treated as denying the said amendment, so as to make the issues thereon.

Proof was taken and the cause heard before the Chancellor, who found that none of the allegations had been sustained by the proof. He recited in his decree that it appeared to the entire satisfaction of the court that the deceased S. H. Chadwell was at the time he executed and delivered said deed to W. J. and Nellie Chadwell to the 100 acre tract of land bearing date of May 3, 1920 was in full possession of his mental faculties, mentally able to make any kind of a contract and look after his business from a mental standpoint, and that said conveyance was a gift to these defendants in part consideration for

the care and attention given to him and his invalid wife in their old and declining years, when they were unable to properly care for themselves, and after all the other children had left home; that said deceased S. H. Chadwell did also, in consideration of the affection he had for him, and the further consideration of his having remained at home, caring for and looking after him and his aged, infirm and paralytic wife, who was sick and unable to work and look after herself, gave to and turned over to him and directed that said money should be deposited in the bank to the credit of W. J. Caldwell, the following sums of money: (1) In 1908 the sum of $2740; (2) May 22, 1915, $400; (3) About January 5, 1927 the further sum of $1000; making in all the sum of $4140; that all of said funds were turned over to said W. J. Chadwell with the full knowledge and understanding that same would be a gift, and that it belonged to him and he had full control over the same from the time it was given to him. Also that it further appears to the satisfaction of the court that the expenses of the hospital, including those of the deceased S. H. Chadwell and his wife, were paid .for by either the labor or out of the $4140, including doctors' bills, doctors, funeral expenses and a monument to the grave of them both. That it further appears that the deceased S. H. Chadwell had, prior to his death, sold the 411 acre tract of land for the sum of about $8000, and that the proceeds of the sale of this land was to be divided equally among all the children, which was done. It was therefore ordered, adjudged and decreed by the court that the complainants' bill and amended bill be and the same were dismissed, the attachment issued and levied on the property of the defendants W. J. Chadwell, Nellie Chadwell and Laura Chadwell were ordered discharged and the injunction dissolved, and complainants and their securities were adjudged to pay the costs, for which execution was awarded.

To this decree complainants excepted, prayed, obtained and perfected an appeal to this court, and now complain, that

"The Chancellor erred in holding that the money which had been turned over by the deceased Samuel Chadwell to his son W. J. Chadwell, the defendant, belonged to him, and in dismissing the bill of complainants, taxing them with the costs."

While we agree with the Chancellor that the proof fails to show any incapacity to make a deed, and that there is nothing in the record from which we would be authorized to set aside the same as made by S. H. Chadwell deceased to his son W. J. Chadwell and his granddaughter Nellie Chadwell for the 100 acre home place, yet we think under the circumstances of this case that to the extent of the conveyance to W. J. Chadwell it should be regarded as an advancement, though there is nothing in the record we think that would authorize the conveyance to the granddaughter, Nellie Chadwell, to be set aside or treated as an advancement against what would be due

her mother, Laura Chadwell, as an heir of the deceased, S. H. Chadwell. Nellie Chadwell is not an heir of the deceased, and as no other grounds are laid for setting aside the deed, the conveyance of the one-half interest in the home tract to her must be regarded as a gift pure and simple to his granddaughter, and that he had reasons therefor sufficiently moving, from which nothing appears that would justify or authorize our interference, either directly or indirectly, with his action in this regard. The mother, Laura's right to share in whatever corpus the remainder may be shown to be, cannot be interfered with on the ground of the conveyance to her daughter.

Upon the proof we also disagree with the conclusions of the Chancellor that the moiety of the 100 acres was given to W. J. Chadwell as a consideration, without intending that it should in any way affect the final distribution among his children of the remainder of his estate. On the contrary we think the record under the circumstances shows that this was intended as an advancement to W. J. Chadwell. The circumstances of the attempted execution of the deed to the 411 acre tract are so significant as to afford, if such were necessary, a justification for the presumption of law that gifts are intended as advancements, unless the contrary is made to appear. This was an ordinary mountain family, consisting of the father and mother and six children. These children, for a large part of their lives, were raised by the father and mother on the 100 acre tract, though it seems that there was owned also a 411 acre tract of mountain land not far away. Most of the children married off, as time and opportunity afforded. One son was given or helped to buy fifteen acres adjoining one of the tracts, a daughter and her husband were permitted to live on and cultivate a part of said 411 acre tract for a number of years during the latter part of the life of the deceased. Another daughter lived nearby and on other land of her husband, or some that was rented. The son W. J. and the daughter Laura lived with the old folks and were never married. The granddaughter (Nellie) was born to the daughter, Laura, and no doubt is a very worthy young woman, as the gifts to her, both by her grandfather and uncle, evidenced that she was a lovable child and possessed their affection. Aside from what usually falls to the lot of a daughter living under such conditions in her father's home, he allowed her to have some stock, out of which she has realized something the rise of $100. He had bought her an organ out of the $500 received for coal, the other $400 being turned over to his son. The son, as he says, came to be the head of the household, as the infirm hands of the father surrendered the reins to his more robust strength and influence. Some years before the death of the old man the timber and coal on the property yielded for them in their circumstances and environment a considerable patrimony, in cash, aggregating something more than the $4140 alleged to have been turned over to the son and claimed as

a gift by him, and which was deposited in the name of the son at different times, aggregating the amount indicated, who also after the death of the father took possession of some $50 more which came into his hands. These funds, it seems, were used by the son in payment of taxes and as the family thus consisting needed money for any purpose, and when the father died it had been reduced to $3300, and since then in the payment for tombstones, funeral expenses, doctors bills, and in the purchase of an automobile at the price of $475, which was given by W. J. to the granddaughter Nellie, it has been brought down to $1800. We do not find that any of these expenditures have been improper, unless it be the $475 used in the purchase of the automobile, which we think should augment the distributable fund to $2275.

It is claimed by complainants that it was the purpose of the father, after giving the home place to W. J. and Nellie to deed the 411 acres or its proceeds to the other heirs, and we think the proof shows that this was his purpose. He had sold the land to the parties who afterwards compelled the specific performance of the contract at $8000. It seems he was desirous of defeating this trade if possible, and was advised to deed it to his children. It is shown without dispute that at the instance of his father the son W. J. Chadwell had a deed prepared. (This was after the execution of the deed to the 100 acre tract. This deed left out the name of the Ausban girl, that was called one of the ''sub heirs,'' a child of the dead daughter. The deed also contained the name of W. J. Chadwell as one of the heirs to whom the conveyance was being executed. The father declined to sign this, W. J. Chadwell says, because he had forgotton to include the name of Margaret Ausban, which had been left out. Complainants say he declined to sign it not only because the name of Margaret was left out, but because also the name of W. J. had been inserted. At any rate the father declined to sign it in the form in which it was presented, and another was prepared which contained the name of Margaret Ausban and omitted the name of W. J. Chadwell. W. J. says he left it out himself, not because his father wanted him to, but he did not think the deed was legal. The father had been enjoined from making a deed in the specific performance suit that had been filed against him. It would seem, however, that if such a reason was existing and valid, it was not regarded as sufficient in the first instance to keep his name from being inserted. It also appears that this latter deed was never executed, and it likewise appears that it remained on deposit in Laura's trunk, and that Laura said no more deeds would be executed, though when on the stand and asked by her sister as to this statement she failed to answer all the question, but only a part of it. She was asked by her sister:

"Q. Didn't pap tell you or not at Alvis', before Alvis and Ida, that Nellie had your part of the land, the deed that youns had a racket over that 411 acre tract? He told my brother he was going to make him a deed and Laura said there was not going to be any other deeds made until she her one? A. I don't have any recollection of him telling me that Nellie had any part in it."

Here was an opportunity to explain that there had been no racket over the 411 acre tract, and to explain that it afforded no reason for the failure to execute the deed after it had been finally corrected. The deed would have conveyed the tract of land or right to the proceeds, which complainants insist they are now entitled to, and there is no other explanation as to why the deed was not executed other than that their father did not mention it any more.

However, in the case of Mildred L. Morris, et al. v. Joel A. Morris, et al., 9 Heisk. 814, it was held, as recited in the syllabus, that

"Under our statutes money or property given a child, is, prima facie, an advancement; and must be accounted for in the distribution and partition of the estate; yet it may be shown to have been a mere gift; but the onus is on him who claims it as a gift to show that is was not intended as an advancement, interest will not be charged on advancements."

The proof fails to show that this was not intended as an advancement. Neither do we think the enforcement of this rule under the circumstances would be inequitable. While these two children stayed on in the home and cared principally for the old folks, as care was needed, the others were nearby and willing to assist as far as they were able. Neither was it an inadvantageous arrangement for them to remain with the old folks. While the others went away and established such homes as they were able to in the vicinity, they were only such, it seems, as to enable them to eke out an existence not any too well dowered to lift them above the need of whatever equality the law assured them in the estate of their father. The circumstances of this plant of a home, encumbered by only these two old folks, and the joint use of the money, that was the old man's heritage, afforded them each opportunities to accumulate property of their own and, which has resulted in such accumulation, at least to some extent, we think, offset the onerous character of any services that love and affection has not mitigated. From the testimony of the defendant W. J. Chadwell as to the value of the home place, $2,200, and as to what was realized for the 411 acres, $7,800, there would be but a small disparity to reconcile in the adjudgment of differences regarding the realty, while, if the gift of the money be regarded as an advancement, there would be a larger accountability to be adjusted. But we think the proof rather indicates that his father was getting old and infirm,

and as the son was having to transact business for him, that the money was placed to his credit more as a trust for all those at home as long as this joint need should require, rather than that it was given to him outright, without any regard to equality, as defendant insists. This view relieves the defendant from an accounting for the same as an advancement. As the proof does not show that the defendant W. J. Chadwell used any part of it improperly, except as indicated, we think it should be taken as the expenditure of S. H. Chadwell, deceased. It appears from the proof that the deceased thought W. J. was running through all the property and told one of the daughters that there would be nothing left for her or the rest on this account, or words to that effect. This shows how the old man looked upon the alleged gift.

We think, therefore, that the $1800, with the $475 used in the purchase of the automobile, and the $50 received after the death of the old man, should be taken as the corpus of the personal property to be distributed, upon the basis of six equal parts. Add to this the $7800 received for the 411 acres, and the $1100 received by W. J. Chadwell as the one-half value of the homestead, we arrive at the value of the entire distributable property of S. H. Chadwell, deceased, with the exception of the value of the fifteen acres at the time it was purchased for Alvis, if it was so given. We do not think, as there was no rental charged the daughter, and as he seemed to want to provide for her without regard to any rentals, that it was intended by him to charge her for living on this 411 acre tract, and therefore neither this matter nor the organ which was given to his daughter Laura by him will be taken into consideration in determining the amount of distributable property.

As indicated the assignment of error is sustained, the decree of the Chancellor reversed, a decree entered here in accordance with this opinion, but this cause will be remanded to ascertain the value of the fifteen acres belonging to the son Alvis at the time it was obtained, whether or not the same or any part thereof was given to him by his father, S. H. Caldwell, and if so whether it was intended as an absolute gift or an advancement. If it was given to him as an advancement, the distributable property will be augmented by its value at the time, and the property distributed upon the basis of this being added to what has already been determined as distributable assets. If not so intended as an advancement, or if not given to said Alvis at all, the fifteen acres will cut no figure as affecting the corpus of the estate.

The defendant W. J. Chadwell will be credited with that he has received from the estate, and a decree will be entered against him for any amount received above that to which he is entitled as his distributable share as the same is fixed by this opinion, and against

any other distributee who has received more than his or her distributable share.

We think the costs of this cause should be paid out of the estate before it is distributed, including a reasonable attorney's fee for complainants, which will be ascertained by the reference.

Portrum and Thompson, JJ., concur.