COWARD et al. v. HAMBLEN et al. NO. 2.—108 S. W. (2d), 885.

Eastern Section. July 3, 1937.

Petition for Certiorari denied by Supreme Court, October 2, 1937.

J. A. Thompson, of Rogersville, for appellants.
Phillips & Hale, of Rogersville, for appellees.

AILOR, J. The original bill in this cause, while seeking other incidental relief, was filed primarily for the purpose of seeking the sale or partition of certain real estate owned by Hugh Coward and wife, Deborah Elizabeth Coward, at the time of their death. It sought to charge appellant with certain advancements and exclude her from any participation in said real estate or the proceeds thereof. The chancellor sustained the contention of the complainants, charged advancements amounting to $650 made to Mrs. Allie Hamblen by her father as against the real estate owned by both the father and mother, and denied her any participation in the estate of either until all of the children had been equalized to the amount of said advancements. Mrs. Hamblen reserved exceptions, and has appealed to this court. She has assigned as error the action of the chancellor in charging

her with said advancements, especially as against the estate of her mother.

There is very little controversy as to the facts. Hugh Coward married Deborah Elizabeth Denton, and, as a result of this union, the parties to this suit were born to them. After their said marriage the lands of the father of Deborah Denton were partitioned, and lot No. 1 containing 22 acres was assigned to the mother of parties to this suit. Another tract of 19 acres was assigned to the mother of Deborah Denton Coward as dower, and the balance of the land was assigned to Julia Snow, only sister of Deborah Denton Coward. On August 5, 1873, Julia Snow and her husband executed a deed conveying a one-half interest in the dower tract to Hugh Coward, father of the parties to this suit. So that Mrs. Coward was the owner of the 22 acres in her own right and the owner of a one-half interest in the 19 acre tract. Hugh Coward and Deborah Denton Coward died, intestate, leaving the lands in question with the title as above indicated. Mrs. Coward died November 23, 1926, and Mr. Coward died August 10, 1932.

On January 25, 1919, Hugh Coward purchased and took title to a house and lot at St. Clair, for which he paid the sum of $150. On February 24, 1922, he conveyed this house and lot to defendant Allie Hamblen, for a recited consideration of $150. But all parties agree that nothing was paid on the recited consideration price. Mrs. Coward joined in the execution of this deed. On August 15, 1925, defendant Allie Hamblen borrowed the sum of $500 from her father, and executed her note for same payable to him. On November 25, 1926, two days after the death of Mrs. Coward, Hugh Coward told Mrs. Hamblen that he would surrender this note to her if she would pay him $50, possibly representing the interest due at the time. The $50 was paid and the note surrendered.

Up to this point there is no dispute as to the facts. Testimony of Mrs. Hamblen to the effect that the note for $500 was surrendered two days after the death of her mother is questioned by inference, but there is no testimony to the contrary, and it must be accepted. The only material conflict in the evidence is in connection with what Mrs. Hamblen is supposed to have said after the death of both her father and mother relative to whether or not the advancements made to her were to be charged against both estates.

It is insisted on behalf of Mrs. Hamblen that the chancellor erred in holding that she should be charged with $650 as an advancement, especially in the distribution of the estate of her mother. Complainants insist that this assignment is not sufficient to question finding of facts by the chancellor. But we think this insistence muse be denied. It is true that the assignment of error is brief, but it points out the particular question made, and brevity is not to be discouraged, when it contains all of the necessary elements of a good assign-

ment, viz., to point out the specific action of the lower court complained of. Appellant now requests permission to amend her assignment of errors so as to specifically call the finding of facts in question, but we think this is not necessary, as the assignment of error first made involves a consideration of the facts and the law necessary to pass upon the question.

The chancellor found that Hugh Coward and Deborah Elizabeth Coward conveyed to Allie Hamblen a house and lot worth $150, and that Hugh Coward forgave to the said Allie Hamblen a note for $500 a few days after the death of his wife, that the note represented earnings from the lands in question and options given thereon, and that Deborah Elizabeth Coward had an interest in said funds, and that, at the time of the conveyance of the lot and at the time of the cancellation of the note, it was within the contemplation of the parties that each of said amounts should constitute advancements against the estates of both the father and mother.

We are unable to find evidence in the record to support these conclusions. The deed for the house and lot recites a consideration paid by Allie Hamblen of $150, and, but for the frank honesty of Allie Hamblen, we think complainants would have been confronted with a serious problem to show that the consideration was not, in fact, paid. In this connection we might observe that we have read the testimony of Allie Hamblen carefully, and are most favorably impressed with her absolute honesty. And while it may be that the mother of appellant might have had some remote interest in the funds paying for the house and lot later deeded to appellant, the fact remains that such interest as she might have had in the funds was extinguished when the deed was taken in the name of Hugh Coward and permitted to remain in that status. The deed vested title in him subject to the marital rights of his wife or widow in the event he predeceased her. And it must be concluded that Mrs. Coward joined in this deed, not as a grantee, but as the wife of Hugh Coward, for the purpose of releasing her homestead rights in same. And no advancement could be charged to the appellant in favor of the estate of Mrs. Coward by reason of her joining in this deed, unless such results should follow from some agreement by which appellant would be bound in equity and good conscience to permit herself to be so charged. There was no such agreement, and the provisions of the deed would refute the idea that any such was contemplated by the parties, the deed reciting that the consideration had been paid.

It appears in this connection that appellant remained at home with her parents until she was somewhat advanced in years, while all of the other children married young. They got an early start in providing themselves with homes, while the appellant remained at the home of her parents, contributing to their comfort and assisting them in preserving what they had and possibly adding to it. We

think it most natural that the parents would have tried to favor her, and are of opinion that the father deliberately tried to carry such purpose into effect.

█ Upon the death of the mother of appellant, the rights of complainants and defendants in this suit to share in her property became vested by descent cast. And this interest should not be divested by the courts except upon clear and satisfactory proof. Two days after appellant became vested with a child's share in her mother's estate her father surrendered to her a note for $500 on payment of $50. There is no insistence that any agreement was made between Hugh Coward and appellant that the surrender of this note should operate as an extinguishment of her interest in her mother's estate. It is only insisted that appellant at some later date said that she had already received all that was coming to her, and that she did not expect any more. Appellant's story as to what happened in this connection is contained in the answer to a single question as follows:

"My sister Mollie was crying and she said that I had already got my part and I told her that if she didn't get as much as me that I would give her something and if she wasn't living I would give it to Arch. And he said, 'I have nothing in it.' And that was all that was said that day about it."

█ Complainants seek to exclude Allie Hamblen from any participation in the estate of her mother on statements by complainants typified by an answer of W. H. Coward. He was being asked about a division of the cash left by his father after payment of his debts. And he testified that Mrs. Hamblen did not claim any of this fund. He was then asked to state in his own way what she said on that occasion, and he answered: "Well, she said she had got her part—had done got hers. She had got $650. She had done had her part unless the rest of us sold the place and it brought more than $650.00 a share. She didn't claim anything unless it brought more than that." He was then asked if Mrs. Hamblen at that time made any claim that she was entitled to an interest in the land, and he answered that she never said a word about it, referring to rental on the farm. And in cross-examination he repeats the statement that Mrs. Hamblen stated that she was not entitled to any of the money left from her father's estate, that she had received her part.

John Coward corroborates appellant as to the circumstances under which she is claimed to have said that she had already received her part, to the extent that her statement was made in response to a question by Mollie Thompson. The statement was unquestionably made in connection with a distribution of the personal estate of the father of Allie Hamblen and the other parties to this suit, and did not primarily involve the real estate. And Mollie Thompson fully corroborates appellant as to what took place. She says that appellant told her that she would make her whole if she did not get as much

in the division as appellant. And we think a careful reading of all of the testimony is conclusive that this was in reality what took place, and that complainants seek to turn this statement made by appellant for the particular benefit of Mrs. Thompson to their own profit, when it was not so intended. We think the proof insufficient to establish a renunciation on the part of appellant of her right to participate in the real estate left by her mother.

Considerable time is spent in the taking of proof to show that appellant did not participate in a distribution of proceeds of rent from the lands in question. This is apparently designed to show that she had abandoned any claim to the lands or the returns from same. But we think a proper analysis of this evidence shows only that the rental on the lands just about paid the taxes and that all parties agreed that the rents would be applied for that purpose. It is true that they were not always so applied, but appellant does not seem to be at fault for this failure.

In providing for the collation of advancements in settling the estates of parties dying intestate, section 8402a of the Official Code of Tennessee provides:

"All advancements, whether by settlement or otherwise, in the lifetime of deceased, or by testamentary provision, shall be collated and brought into contribution in the partition and distribution of the real and personal estate of the deceased; those in real estate, first in the partition of real estate, and those in personal estate in the distribution of the personal estate."

We conclude that the mother of appellant made no advancement to her during her lifetime, and that appellant entered into no binding agreement preventing her from claiming her legal share in the property of which her mother died seized and possessed. The decree of the chancellor will be reversed, and the cause remanded to the chancery court of Hawkins county to be further proceeded with in conformity with this opinion. Complainants will pay the costs of this appeal, and the costs of the lower court incident to the questions raised by them and decided adversely to their contentions in this court. Reversed and remanded.

Portrum and McManus, JJ., concur.