## BOYD CRAVENS et al., Appellants, v. JAMES BROWNIE CRAVENS et al., Appellees.
—410 S.W.(2d) 424.

Middle Section. June 24, 1966.

Certiorari Denied by Supreme Court, October 3, 1966

Maddux, Cameron & Jared, Cookeville, for appellants.

Neal & Craven, Jamestown, for appellees.

## I

SHRIVER, J. The Chancellor, Honorable Scott Camp, decreed that the sum of One Hundred Thousand, Seven Hundred Thirty and 57/100ths Dollars ($100,730.57), which the deceased H. C. Cravens gave to two of his seven children shortly before his death was an advancement and should be collated and brought into contribution in the distribution of the estate. From this decree the two donees, defendants below, appealed and assigned errors.

Counsel for appellants, Boyd Cravens and Lura Williams, in their brief, made a clear and succinct statement of the case substantially as follows:

On March 13, 1965, James Brownie Cravens and Cherrie Lee Teague filed their original bill in this cause naming as defendants Boyd Cravens and Lura Williams and Stanley Cravens and Josephine Cravens, the latter two being named as defendants because of their liability on notes involved in the litigation. The bill alleges that complainants were children of H. C. Cravens, deceased,

who died intestate, a resident of Fentress County, Tennessee, on May 12, 1964; and that complainants each were the owners of a one-seventh interest in said estate; that in February, 1964, the said H. C. Cravens issued two checks each in the amount of Thirty Thousand ($30,-000.00) Dollars made payable to the defendants, Boyd Cravens and Lura Williams, and that the said Cravens and Williams got the benefit of said checks. The bill further alleges that on May 21, 1963, the said H. C. Cravens transferred to Boyd Cravens and/or Lura Williams notes on Stanley Cravens in the total amount of Fifty-One Thousand Nine Hundred Eighteen and 01/100ths Dollars ($51,918.01), and that from such date up to the time of filing the bill, the said Boyd Cravens and Lura Williams had collected more than Sixteen Thousand Dollars ($16,000.00) on said notes, and that the remaining balance was approximately Twenty Five Thousand Dollars ($25,000.00). The bill prays that these gifts be decreed to be advances; that the defendants, Boyd Cravens and Lura Williams, be required to account for the same, and that they be collated and brought into contribution in the division of the personal estate of the said H. C. Cravens, deceased.

There are certain other allegations which are not now important, since no dispute arose over them, and the above mentioned checks and notes were the only remaining issues in the lawsuit at the time of trial.

No answer was filed in behalf of the defendants, Stanley Cravens and Josephine Cravens. The defendants, Boyd Cravens and Lura Williams, filed an answer, the essence of which is to deny that the gifts were advancements, but asserting that the same were outright gifts intended by the said H. C. Cravens to go to the answering

defendants over and above their normal shares in the estate.

The cause was tried before the Chancellor on oral and documentary evidence in Jamestown on October 1, 1965. *The only proof offered by the complainants* was given by the witness, Stanley Cravens, who testified that the balance due on said notes as of May 21, 1963, the time of transfer to the defendants, was Forty Thousand Seven Hundred Thirty and 57/100ths Dollars ($40,730.57); the balance due thereon at the time of H. C. Cravens' death was Thirty One Thousand Nine Hundred Three and 99/100ths Dollars ($31,903.99); and that the balance due thereon at the time of trial was Twenty Thousand Five Hundred Ten and 50/100ths Dollars ($20,510.50). The complainants were not offered as witnesses, and did not even appear in the courtroom during the trial.

The defendants, in addition to themselves, offered five witnesses. Boyd Cravens testified that his father gave him the notes, saying he wanted to give them to him in such a way that there "wouldn't be any come-back." (Tr. 45.) Later, H. C. Cravens requested of Boyd Cravens that the payments on said notes go to H. C. Cravens during his lifetime, to which Boyd Cravens agreed. (Tr. 48.) At a later time, his father asked him to give his sister, the defendant Lura Williams, half of the notes, to which Boyd Cravens agreed. (Tr. 49, 50.) H. C. Cravens told Boyd Cravens that he had given the complainants as much as or more than he had given the defendants and he wanted the defendants to have the notes. (Tr. 50, 51.)

Boyd Cravens further testified that in February, 1964, H. C. Cravens gave to each of the defendants a check in the amount of Thirty Thousand ($30,000.00) Dollars, saying that he wanted this to be a gift to the defendants

and not to be "contained in any way to the rest of the estate." At the time, H. C. Cravens said that he had given the "other kids money and land, and that much if not more." (Tr. 52-54.) He further testified that over a period of years, H. C. Cravens had given to the complainants, James Brownie Cravens and Cherrie Lee Teague, who are a half brother and sister to defendants, various properties, including land, bank stock, shirt factory bonds, Co-op, an automobile and cash in value of $112,-500.00 to $127,500.00. (Tr. 55-62.) H. C. Cravens told Boyd Cravens and Lura Williams "that he was going to see that we shared the same as the others, he had given them more, but he was going to make up for it, that we had stayed with him through his sickness when nobody else did." (Tr. 63.)

The defendant, Lura Williams, testified, in essence, the same as Boyd Cravens, although she had not had as many conversations with her father concerning the estate. (Tr. 67, 69-71.)

Otis E. Hull, Cashier of the Union Bank, Mrs. Emma Rains, Mrs. Grace Baggett, Henderson Cravens, a brother of H. C. Cravens, and Lloyd Cravens, another brother of H. C. Cravens, all testified as set out in the statement of counsel in their brief and which will be discussed hereinafter.

The Chancellor found that the defendants, Boyd Cravens and Lura Williams, had failed to overcome the presumption that the gifts were intended to be advancements. He held that the gifts were advancements for which the defendants would have to account in the final distribution of the estate. He required the defendant,

Boyd Cravens, to account for the $30,000.00 check and $20,365.29 in notes, for a total of $50,365.29, together with six (6%) per cent interest from May 12, 1964, the date of the death of H. C. Cravens. He required the defendant, Lura Williams, to account for her $30,000.00 check, plus $20,365.28 in notes, for a total of $50,365.28, together with interest. He allowed a fee for complainants' solicitors, and adjudged the costs against the defendants.

## II

## ASSIGNMENTS OF ERROR

1. It was error for the Chancellor to hold that the transfers of the notes and cash by the deceased to the defendants were advancements to be charged against their respective ultimate shares in the estate, as distinguished from outright gifts.

2. It was error for the Chancellor to hold that defedants' proof did not overcome the presumption that the transfers of cash and notes were advancements.

3. It was error for the Chancellor to invoke the harsh rule of Johnson v. Patterson, 81 Tenn. 626, as to the quantum of proof necessary to overcome the presumption of an advancement instead of a gift, when the modern tendency of the courts has been to ease the requirement of the amount of proof necessary for such purpose.

4. It was error for the Chancellor to require the defendants to account for the entire balance due on the notes at the time of the gift since the undisputed proof clearly shows that the said H. C. Cravens received the payments thereon up to the date of his death.

5. It was error for the Chancellor to require defendants to pay interest on the full face value of the notes when at the time of trial, they had never collected the sum of $20,510.50 of said notes.

## III

Section 31-701, T.C.A. provides that absolute equality shall be observed in the division of estates of deceased persons, except where a will has been made and its provisions render equality impossible.

In Morris v. Morris, 56 Tenn. 814, and other later cases it was said that the foregoing provision was a mere announcement of the rule of law effective at the time without the statute and was not intended to enlarge or restrict the law as to advancements.

It was further said in Morris v. Morris, supra, that this statute was passed by the Legislature with reference to the estate owned by the deceased at the moment of his death and upon the idea that no advancement had been made by him in his lifetime.

In Laman v. Craig, 30 Tenn.App. 353, 206 S.W.2d 309, it was said that, while the fact that there was a gift and conveyance of the title does not exclude the idea of an advancement and that the gift and title conveyed is an essential feature of it, in order to exclude the idea of advancement there must be shown not only the gift but a gift with a purpose that property so given shall go to that child as something over and above the share of the other children of the donor.

Section 31-702, T.C.A., provides that all advancements, whether by settlement or otherwise, in the lifetime of deceased, or by testamentary provision, shall be collated

and brought into contribution in the partition and distribution of the real and personal estate of the deceased.

In construing this statute the Courts in a number of cases, including Morris v. Morris, supra, and Johnson v. Patterson, 81 Tenn. 626, and Cazassa v. Cazassa, 92 Tenn. 573, 22 S.W. 560, 20 L.R.A. 178, 36 Am. St. Rep. 112, said that the money or property given to a child is prima facie an advancement, yet, it may be shown to have been a gift. However, the burden of proof is upon one who claims it as a gift to show that it was not intended as an advancement. To the same effect is Chadwell v. Chadwell, 9 Tenn. App. 181.

■ We consider this to be a correct statement of the applicable law, that is, that the burden is upon the defendants below, appellants here, Boyd Cravens and Lura Williams, to show that the money and notes conveyed to them during the donor's lifetime were not intended as advancements.

■ As was said in Rains v. Hays, 2 Cooper's Tenn. Chancery 669 and indicated in Johnson v. Patterson, 81 Tenn. 626 and other cases, the donor's intention must be determined from his conduct and conversations at or about the time of the gift. The agreement must depend on the circumstances at the time and cannot be made better or worse by subsequent facts.

It is insisted by counsel for the appellants that the testimony of the witnesses in this case, several of whom were completely disinterested, clearly indicates an intention on the part of the deceased, H. C. Cravens, to make outright gifts to the appellants as distinguished from advancements.

Boyd Cravens, in his testimony, told of being asked by his father to go to the Bank to get Mr. Hull to take him up

to his father's room at the motel and upon arrival his father told Mr. Hull that he wanted him to write on the back of the notes a statement that they had been given to him (Boyd Cravens) and that he wanted it fixed up according to law, and that he thought that Mr. Hull knew how to do it. When asked to be more specific as to what his father had said he answered without objection:

"A. Well he told me that he wanted me to have the notes, and wanted fixed on the back of them within the law that they would be mine and there wouldn't be any comeback.

Q. Now then what happened next?

A. Mr. Hull and I took the notes down to the Union Bank and he typed on each one of them. I brought them back up to my father in the motel and he signed them.

Q. Now then what did he do with them then after he signed them?

A. Well he gave them to me. They was already mine and I took the notes."

He further testified that some months later his father told him that he would like to have the income from those notes as long as he lived to which the appellant readily agreed. At that time his father also told him that he would like for Lura Williams to have half the notes and he also agreed to that.

He further testified as follows:

"Q. Now did he at that—state whether or not at that time that he made any mention of any gifts that had previously been given to the complainants in this cause?

A. He told me that he had given them as much or more than he had given us.''

He also testified in detail about the conversation in his father's room when his father asked him to go get his sister and that they sat and talked together and that his father handed him the two checks made out for $30,000.00 each and said that he wanted written on them ''a gift''. That he filled out the two checks and his father signed them and gave one to him and one to his sister Lura saying this was not ''contained'' in any way to the rest of the estate.

Lura Williams testified to substantially the same facts and stated that her father never did say anything to the effect that these notes and checks were to be considered as advancements. She further testified (also without objection):

''Q. And what did your father say to you?

A. He said he was giving them to us because we had been good to him and he wanted to give us something.

Q. Was there any reference made there the amount that was given to Cherrie Lee and Brownie?

A. He said he had given Cherrie Lee and Brownie much more than he had given Boyd and I.''

Mr. Otis E. Hull testified about this matter and among other things stated:

''A. Yes sir. And I don't recall if he said he had some notes on Stanley Cravens, C. C. Furniture Store or not, but he said he had some notes on Stanley, that is Stanley Cravens, and he wanted to give them to Boyd. And he wanted me to take the notes

transfer them to Boyd so that there would be no recourse on him, he wanted to give them to Boyd, make Boyd the owner.

Q. Did Mr. H. C. Cravens say anything about wanting this asset in the form of these notes to be considered an advancement to Boyd Cravens and to be credited against his interest in the estate?

A. No, he did not, he just said he wanted to give him the notes."

Mrs. Emma Rains testified she had talked to Mr. Cravens about the gifts, particularly to the defendant Lura Williams stating that he had given the property to the other children and so he wanted to give her some too. Among other things she testified as follows:

"Q. Did he make any statements at that time about why he had given her thirty thousand dollars?

A. Yes he did. Well he was trying to equal up with the other children."

Mrs. Grace Baggett testified that she had a close acquaintanceship with the deceased, that she saw Mr. Cravens frequently and that he had talked with her about the gift to Lura Williams and Boyd Cravens and was asked to tell the Court as nearly as she could remember the things he said about it, why he wanted to make the gift to Lura and Boyd and to use the exact words as nearly as she could. She answered:

"A. Well he told me he had given to the other children. And this was at first, that he was going to give it to them. And then when he had given it to them, he told me he said 'Well I have given Totsie,' we all said Totsie, and Boyd and he said 'I didn't give

them as much as I have given to the others, but they understand', and he said 'there is not too much left, it will be just land that is to be divided among all of them'. And that I believe is pretty much the exact words he said.

"Q. I am going to ask you whether or not he mentioned a phrase fifty thousand dollars in this conversation?

"A. He told me that if he could give them fifty thousand it wouldn't be as much as he had given the rest of them."

Mr. Henderson Cravens, brother of deceased H. C. Cravens, stated he was very close to his brother, the donor, and when questioned about it he testified as follows:

"A. He was telling me about writing those checks to Totsie and Boyd for thirty thousand dollars apiece.

Q. And what did he say about those checks?

A. Well, he said—the way I understood it in the checks he said he wrote that this is a gift, on the check, now that is the way I understood it."

Mr. Lloyd Cravens, another brother of H. C. Cravens, testified that he was very close to his brother and that his brother had told him about giving this money to the defendants. He stated:

"A. Well, he told me he wanted them to have it that he was giving it to them.

Q. And did he detail to you the amount that he gave each one?

A. This is what he told me thirty thousand ($30,000.00) dollars apiece.

Q. Did he—what if you can state what were his words, what did he actually say to you about it?

A. Well, he just said he wanted to give it to them while he was living, then he would know that they got it.

Q. Did he or not ever say anything about having made this gift to his other children Brownie Cravens and Cherrie Lee Teague?

A. Oh, yes.—uh—"

\* \* \* \* \* \*

"Q. Now with respect to the checks and the notes did Mr. H. C. Cravens ever say anything to you about this being an advancement, that he wanted Boyd Cravens to be charged and Mrs. Lurie Williams to be charged with these gifts when the estate was being wound up?

A. No, sir, he never mentioned that."

We are impressed that Mr. H. C. Cravens as a layman was, in all probability, not aware of the technicalities involved in making a gift to his children so as to avoid having such gift held to be an advancement and neither did his advisor, Mr. Hull, know of these technicalities.

We are also impressed that when Mr. Cravens, the donor, stated that he wanted to fix the notes and checks in such way that there would be "no comeback" and that the gift of the checks "wasn't contained in any way to the rest of the estate" he was expressing an intention to make an outright gift and not an advancement. When we consider this in the light of the other testimony, including that of Mrs. Grace Baggett which was to the effect that he said he had given practically all his personal property to the children during his lifetime and that there was not

much left except the land that was to be divided among all of them, with no evidence offered to refute it, that this is sufficient to sustain the position of these defendants, and that they have, indeed, carried the burden of showing that the gifts were intended as outright gifts and not as advancements.

It is pointed out by counsel for the appellants that the modern tendency of the Courts is to lessen the quantum of proof necessary to overcome the presumption that a conveyance from a parent to a child was intended as an advancement and not a gift, citing many cases, including Coward v. Hamblen, 21 Tenn.App. 239, 108 S.W.2d 885; Thornton v. Thornton, 39 Tenn.App. 225, 282 S.W.2d 361 and a number of cases from other jurisdictions. In 3 Am.Jur.2d Advancements, Sec. 95, it is said that if the only evidence of intention is to the contrary of an advancement it has been held that the presumption arising from the transfer is not sufficient to make a conflict in the evidence which will place a judgment of advancement beyond the correcting power of an Appellate Court. Also that "there has been some variance among the Courts as to the quantum of proof needed to overcome the presumption of an advancement, some cases holding that only slight evidence is needed to overcome the presumption while a few cases have indicated that a higher degree of proof is necessary." In Clement v. Blythe, 220 Ark. 551, 248 S.W.2d 883, 31 A.L.R.2d 1033, the Court concluded with this statement:

"We agree with Schouler's view that the presumption may be readily overcome. In the case at bar a preponderance of the testimony shows that the conveyance to the appellee was not meant as an advancement."

It is argued by counsel for the appellant that the Chancellor relied almost entirely on the case of Johnson v. Patterson, 81 Tenn. 636, which was decided in 1884 and involved the estate of former President-Andrew Johnson, who, of course, was a lawyer. Counsel insist that the requirement set forth in this case as to the quantum of proof necessary to overcome the presumption of an advancement was too strict and too harsh to be applied to the case at bar wherein the donor was an uneducated layman. It is also said that the modern tendency of our courts both in Tennessee and in other states is to ease these rigid requirements.

It is to be noted that there is in the transcript at Page 2, a document executed by deceased H. C. Cravens purporting to give to his son Boyd C. Cravens, "all cattle, farm machinery, trucks and private cars belonging to the said H. C. Cravens." And, as is pointed out by counsel, it is obvious that Mr. Cravens signed this document without the benefit of legal counsel thinking it would be a valid will disposing of such property according to his intent and desire. However, Mr. Boyd Cravens and his counsel have not at any point insisted that this disposition, evidently intended by the deceased H. C. Cravens to be made to his son, is sufficient as a will, and Mr. Boyd Cravens has not sought to retain these items of personal property as his own, but has reported them as a part of the distributable estate. This action of H. C. Cravens sheds some light upon his intentions and upon his lack of legal learning.

Counsel for the complainants, appellees, cite the case of Popplewell v. Flannigan, 244 S.W.2d 445 (Ky. Dec. 16,) as authority for their position. In said case a check given a daughter by a father shortly before his death for the

purpose of equalizing shares of several children in the father's estate because of her assistance to him, was chargeable as an advancement against the daughter's share of the deceased father's undivided estate and could not be treated as payment of the debt, though the check was presented by her and paid by the Administrator after the father's death.

It is to be noted that the Popplewell case is distinguishable from the case at bar on its facts and that the Court relied on the Kentucky statute with respect to advancements which statute is different from and more strict than the Tennessee statute.

Finally, it is to be noted that there is evidence in the record which is not controverted which is to the effect that, over a period of years H. C. Cravens gave to the complainants, James Brownie Cravens and Cherrie Lee Teague, various properties, including land, bank stock, shirt factory bonds, stock in Co-ops and automobiles, valued at $112,500.00 to $127,500.00, but we do not have before us any claim or insistence that these gifts be brought into the estate as advancements.

From all of the above, we are of opinion that the Chancellor was in error in sustaining the bill of the complainants and in holding that these gifts to the defendants were advancements which must be accounted for in the distribution of the estate.

One other matter for determination has to do with the amount of interest defendants were required to account for under the Chancellor's decree. We agree with counsel for defendants that the proof shows that the appellants had only collected and kept for themselves the total sum of $11,393.49 which was the amount collected between the date of H. C. Cravens' death and the date of the trial.

However, the Chancellor charged them with the entire value of the notes being in the total amount of $40,730.57.

■ The proof further shows that between the date of the transfer of the notes and the date of H. C. Cravens' death the proceeds from the notes in the amount of $8,826.58 was collected and paid to H. C. Cravens himself and that the balance of the notes, being $20,510.50 at the time of the trial had never been collected by anyone. In any event, it does not seem equitable, or, in fact authorized by law, that the defendants be charged with a greater amount than that which they collected, even if it should be held that the notes are to be turned back to the estate as a part of its assets for distribution.

The Chancellor's decree further requires that the defendants below, appellants here, account for interest on the entire balance of $40,730.57 from the date of H. C. Cravens' death, when in point of fact, they had not had the advantage or use of this sum. It would seem that counsel for defendants are correct in their insistence that the defendants should not be required in any event to account for any interest except on that portion which they actually received which amount is shown to be $11,383.49.

We pass on these matters in order to adjudicate them in this cause, however, as hereinabove indicated, we hold that it was error to adjudge the amounts in question to be advancements instead of gifts. Therefore, the decree of the Chancellor is reversed and the bill of the complainants is dismissed at their cost.

Reversed and dismissed.

Humphreys and Puryear, JJ., concur.