## Thomas v. Commonwealth.

(Decided April 18, 1922.)

### Appeal from Hart Circuit Court.

1. Criminal Law—Evidence—Other Offenses.—On a criminal prosecution, evidence that the defendant committed another offense is not admissible on the question of identity, unless the circumstances are such as to show that he who committed the one must have committed the other.

2. Criminal Law—Evidence—Other Offenses.—On a prosecution for uttering a forged instrument, evidence that ten months later defendant uttered at another bank a forged check payable to W. E. Owen, and about eleven months later went to the railroad freight office, and procured an anvil and forge consigned to W. E. Owen & Company and signed a receipt for them in the name of W. E. Owen, was not admissible on the question of identity, there being nothing so unusual, novel or distinctive in the method or means employed to commit the other crimes and the crime charged as to justify the inference that he who committed the former must have committed the latter.

C. B. LARIMORE and C. H. HATCHETT for appellant.

CHAS. I. DAWSON, Attorney General, and THOMAS B. McGREGOR, Assistant Attorney General, for appellee.

Opinion of the Court by Judge Clay—Reversing.

Joe Thomas was convicted of uttering a forged instrument and his punishment fixed at two years' confinement in the penitentiary. He appeals.

On January 23, 1920, there was presented to W. F. Murphy, cashier of a bank at Horse Cave, a check for $640.00, drawn on the Trigg National Bank of Glasgow, payable to the order of D. O. Green and purporting to be signed by J. O. Martin. The party presenting the check stated that he wanted to deposit it to his credit in the Horse Cave bank. While making out the deposit slip he changed his mind, and stated that he wanted $240.00 in

cash and the remainder deposited to his credit. After some delay, during which he ascertained of the party that he lived about eight miles this side of Glasgow and was moving to Horse Cave and needed the money to buy stuff with which to go to housekeeping, Murphy finally consented to the arrangement and gave the party $240.00, together with check book, and placed the balance to his credit. When the check was presented at the Trigg National Bank, payment was refused on the ground that it was a forgery. From that time on, Murphy was on the alert to discover the party who presented the check, and about a year later he identified appellant as the man. This he was able to do, because he took particular notice of appellant when the check was presented, and appellant had on the same clothes at the time of identification. While J. O. Martin admitted that others sometimes drew checks on his account, he testified that the signature to the check was not his, and that in his opinion it was not signed by anybody else for him. He also admitted that after stating that the check was not signed by him, he returned to the bank for the purpose of examining the check, as he did not want to get anybody into trouble. It was shown by G. C. Holman, agent of the Louisville & Nashville railroad company at Horse Cave, that on December 23, 1920, a person representing himself to be W. E. Owen came to the freight office and procured an anvil and forge consigned to W. E. Owen & Company, and signed a receipt for it. He further identified appellant as the person who signed the receipt. Maud Totty, assistant cashier of the Citizens National Bank at Glasgow, testified that she had had transactions with appellant, not as Joe Thomas, but as W. E. Owen, and that in November, 1920, he presented a check for $430.00 payable to W. E. Owen and purporting to be signed by W. E. Hatcher. Appellant endorsed the check as W. E. Owen, and the check proved to be a forgery. A. Trigg, the cashier of the Citizens National Bank at Glasgow, testified that on the day following the deposit of the check of $430.00, appellant came to the bank and presented a check for $270.00 signed by W. E. Owen, and the money was paid to him. The check so drawn, as well as the identification card written at the time the check was presented, were introduced in evidence.

On the other hand, Thomas denied presenting the check for $640.00 to the bank at Horse Cave on January 23, 1920, and stated that he was at the home of his father

about eight miles away. He also denied being at the railroad office or at the Citizens National Bank and representing himself to be W. E. Owen. His statement that he was at the home of his father was corroborated by several members of his family, and also by H. T. Moore, who had moved to California but gave his deposition. The sheriff of the county and several of his neighbors testified that he bore a good reputation.

The principal ground urged for reversal is that the court erred in admitting evidence of other crimes. The Commonwealth concedes the general rule that evidence of other crimes is not ordinarily admissible, but insists that the facts of this case bring it within the well known exception that such evidence is admissible to establish the identity of the accused. The exception is sometimes applied, but not in every case where the question of identity arises. The exception to the rule is thus stated in Underhill on Criminal Evidence, p. 107:

"(4) When a crime has been committed by the use of a novel means or in a particular manner, evidence of the defendant's commission of similar offenses by the use of such means or in such manner is admissible against him as tending to prove the identity of persons from the similarity of such means or the peculiarity of the manner adopted by him."

In other words, evidence of another crime is not admissible even on the question of identity, unless the circumstances tend to show that he who committed the one must have committed the other. Shaffner v. Commonwealth, 72 Pa. 60, 13 Am. Rep. 649. In the well considered case of Peoples v. Molineux, 168 N. Y. 264, 61 N. E. 286, the rule respecting the use of other offenses as a means of identifying the accused as the perpetrator of the crime charged was stated as follows:

"Another exception to the general rule is, that when the evidence of an extraneous crime tends to identify the person who committed it as the same person who committed the crime charged in the indictment, it is admissible. There are not many reported cases in which this exception seems to have been affirmatively applied. A far larger number of cases, while distinctly recognizing its existence, have held it inapplicable to the particular facts then before the court. The reason for this is obvious. In the nature of things there cannot be many cases where the evidence of separate and distinct crimes, with no unity or connection of motive, intent or plan,

will serve to legally identify the person who committed one as the same person who is guilty of the other. The very fact that it is much easier to believe in the guilt of an accused person when it is known or suspected that he has previously committed a similar crime proves the dangerous tendency of such evidence to convict, not upon the evidence of the crime charged, but upon the super-added evidence of the previous crime. Hence our courts have been proverbially careful to subject such evidence to the most rigid scrutiny, and have invariably excluded it in cases where its relevancy and competency was not clearly shown.''

Here the other offenses were not only separate and distinct, but were far removed in point of time from the offense charged. There was nothing novel, unusual or distinctive in the method or means employed to commit the crime charged and the other crimes proved. On the contrary, all the crimes were committed in the usual way and no such connection between the other crimes and the crime charged was shown as to justify the inference that he who committed the former must have committed the latter. It follows that the evidence complained of was improperly admitted. Boyd v. U. S., 142 U. S. 450, 35 L. Ed. 1077; Effler v. State, 85 Atl. (Delaware) 731.

We find no merit in the contention that the verdict was flagrantly against the evidence.

Judgment reversed and cause remanded for new trial consistent with this opinion.