# LAMAN et al. v. CRAIG et al.—206 S. W. (2d) 309.

Western Section.   September 12, 1947.

Petition for Certiorari denied by Supreme Court, December 8, 1947.

354

S. Homer Tatum, of Alamo, and W. R. Landrum, of Trenton, for complainants.

Avery & Avery, of Alamo, for defendants.

BAPTIST, J.   The bill alleges that the complainants, Mattie Lou Craig Laman and Mary D. Craig Davis are the daughters of J. M. Craig, deceased; that the complainants, Berle Smith, Edith Smith Tatum and Charles Wayne Smith, are the only children and heirs at law

of Ethel Craig Smith, deceased, a daughter of said J. M. Craig, deceased, the last named of which, Charles Wayne Smith, being a minor who sues by his next friend, Mattie Lou Craig Laman, together with the defendant, Homer Craig, are the only children and heirs at law of the said J. M. Craig, deceased.

The J. M. Craig died intestate on March 31, 1945, in his home in Humboldt, Gibson County, Tennessee; that at the time of his death his son, the defendant, Homer Craig, was living in the home with him.

That J. M. Craig left no widow, his wife having predeceased him.

That his daughter, Ethel Craig Smith, died in 1929, leaving as her only children and heirs at law, the three complainants heretofore mentioned.

That on August 20, 1928 the said J. M. Craig and his wife, M. L. F. Craig, after conferring with his four children as to what he and they considered a fair division of his property at his death, executed four deeds to certain lands in Crockett County, conveying same to his children by separate tracts.

That each of said deeds recited a consideration of love and affection, but subject to a life estate specifically reserved to the grantors and providing that the grantee should not be entitled to the possession or revenues therefrom until the death of the grantors.

That the deeds, while properly executed and acknowledged, were never manually delivered to the grantees, and were in the possession of the deceased up until the time of his death and were found in a dresser drawer in his home after his death.

That the deed to the daughter, Mattie Lou Craig Laman, embraced two tracts, the first containing 30 acres,

the second tract describing an 85 acre tract as being the homestead tract, but said: "Of this 85 acre tract there is 20¼ acres cut off the southwest corner for Mattie Lou Craig Laman" and that under said deed she supposedly would have taken; that the 30 acre tract first described, while referred to in the deed as having been purchased from Ewell Laman and his wife, Mattie Lou, it is alleged that Laman and his wife, Mattie Lou never executed a deed to said 30 acres to J. M. Craig, although J. M. Craig did pay the consideration price.

That subsequent to the date of the deed of August 20, 1928, at the request of J. M. Craig, his daughter Mattie Lou Laman and her husband executed a deed to 15 acres of the 30 acre tract to J. W. Bozette, et al, in consideration of the fact that they execute a conveyance to J. M. Craig of a tract of 40 acres; that the 40 acre tract so conveyed to J. M. Craig represented 15 acres of the 30 acre tract described in the deed from J. M. Craig and wife to Mattie Lou Laman.

That on March 23, 1945, eight days prior to the death of his father, and while his father was very ill and his mental condition was very bad, and without the knowledge or consent of his father, the defendant Homer Craig, took the deed which had been executed in his favor from the custody of his father and had the same recorded in the Register's Office of Crockett County, with the intent to defraud the complainants of their rights.

That approximately two years prior to the death of J. M. Craig, he had purchased a house and lot in Humboldt, Tennessee, where he was living at the time of his death; that the defendant, Homer Craig and his wife were occupying the home with him.

That on March 12th prior to Mr. Craig's death on March 31, 1945, the defendant Homer Craig procured his father to execute a deed to him conveying the house and lot in Humboldt to him for a recited consideration of love and affection and had the same recorded in the Register's Office of Gibson County three or four days prior to J. M. Craig's death.

That the deceased's mental condition was such that he was incapable of making a deed or of knowing and understanding the transaction that was taking place; that said defendant procured his father to make said deed for the purpose of defrauding the complainants of their share of the property as children and heirs at law of J. M. Craig.

That the deed to the defendant, Homer Craig, of August 20, 1928, embraced in the description 65½ acres, being the homeplace, with 20¼ acres cut off the southwest corner for Mattie Lou Craig Laman.

That the deed to the defendant, Homer Craig, as originally written contained 65½ acres, but that the description has been changed to read 75½ acres and that such change was made without the knowledge, consent or approval of the deceased, J. M. Craig, and that it was not done by him or by any one authorized to bind him in the premises.

That the deeds never having been delivered and having remained in the custody and under the control of the maker, J. M. Craig, during his life, there was no delivery of the same.

That the deed executed by J. M. Craig and wife to Mary D. Craig Davis described two parcels of land, one containing 76 acres and the other being a house and lot in Gadsden, Tennessee; that this property was sold by

J. M. Craig in his lifetime and that he took notes for the deferred payments payable to himself; that J. M. Craig executed the deeds to said property and the money and notes taken into his care and in his own name.

That the proceeds of the sale of the house and lot in Gadsden, to-wit, $1500, was used by J. M. Craig in the purchase of the house and lot in Humboldt hereinbefore referred to.

That after the execution on August 20, 1928, of the four deeds, the deceased, J. M. Craig put the grantees in possession of the respective properties as lessees, and that he continued to rent the properties to the parties until his death at an annual rental each of $150 per year; that this was true of Mrs. Laman and Mrs. Davis until the property deeded to them was sold and they ceased to occupy it as lessees.

That the said J. M. Craig died seized and possessed of certain other lands in Gibson and Chester County, Tennessee, and that no administration was had on his estate.

It is alleged that the two deeds were procured by Homer Craig from J. M. Craig by fraud and undue influence; therefore, constituting a cloud upon the title of the lands of the deceased and should be cancelled.

Upon application a receiver was appointed to take charge of all the lands described in the bill.

Also, since the bill was filed, an admistrator has qualified and on his petition was permitted to pay over the assets of the estate into the hands of the Clerk and Master.

The defendant, Homer Craig, answered denying all allegations of fraud and undue influence. He denied that the mental condition of the deceased was bad at the time of the execution of the deed to the house and lot in Hum-

boldt. He alleged that the deed dated August 20, 1928, was given to him by his father of his own free will. He alleged that the deed to the house and lot in Humboldt was executed by his father of his own free will and without any fraud upon his part.

That some time before the death of his father and while his father was in his right mind, his father called him into the room and handed him the deed, which had been executed August 20, 1928, and stated to the defendant that it was defendant's deed to the homeplace.

The jury was called for and the following issues were submitted:

"Q. When the deed from J. M. Craig to Homer Craig was signed and acknowledged, purporting to convey the house and lot in Humboldt, Tennessee, bearing date of March 12, 1945, was J. M. Craig's mental condition such that he knew and understood the nature and import of the transaction being had? Ans. Yes.

"Q. Did Homer Craig, or any one else for him procure J. M. Craig to execute the deed to the house and lot in Humboldt, Tennessee, described in the deed dated March 12, 1945, by fraud and undue influence? Ans. No.

"Q. Was the deed dated August 20, 1928, signed by J. M. Craig and wife, M. L. F. Craig delivered in person by J. M. Craig to Homer Craig. Ans. No.

"Q. If J. M. Craig delivered the deed dated August 20, 1928, signed by J. M. Craig and wife M. L. F. Craig, to Homer Craig, was the delivery of said deed procured by fraud or undue influence? Ans. Yes."

The Chancellor made a finding of facts and entered a decree in accordance with the verdict of the jury upon the issues.

Both of the parties made motions for a new trial, both of which motions were overruled. From this action both parties have appealed to this Court and assigned errors.

J. M. Craig, the deceased, died in March 1945 at the age of 80 years. His wife M. L. F. Craig died in 1939.

On August 20, 1928, the deceased, J. M. Craig and his wife executed four separate deeds, one to each of their children, namely, Mary D. Craig Davis, Ethel Craig Smith, Mattie Lou Craig Laman, and Homer Craig. These deeds conveyed to each of these children certain farm lands, with a house and lot in Gadsden, Tennessee to Mary D. Craig Davis in addition to a tract of land.

The deeds were not delivered to the parties, but placed in a bureau drawer in the home of the deceased, J. M. Craig, and there kept until his death.

Each of the deeds reserved a life estate in the grantors with the survivor to have the benefit, of such life estate until death.

The several grantees were put in possession of the respective tracts described in the deeds as conveyed to them with the agreement that each child would pay $150.00 annually as rent upon the tracts of which they were put in possession.

At the conclusion of the complainants' proof and at the conclusion of all the evidence, the defendant, Homer Craig, moved the Court to withdraw from the jury the issues with respect to the delivery of the deed purporting to convey the tract of land described in the deed from J. M. Craig on August 20, 1928, to Homer Craig, and assigns that the Court was in error in overruling said motion.

. The defendant undertakes to support this assignment on the ground that the deeds were made by and with the

consent of the children, and with their approval and acquiescence, after conference with them and was kept by J. M. Craig by and with the consent of the children and that the deeds had been legally delivered to them at the time of the execution of the same.

We are constrained to hold that there was no legal delivery of the deeds executed by J. M. Craig to his several children on August 20, 1928.

An essential element of the delivery of a gift is that the donor renounces all claim upon his part and the acquisition upon the part of the donee of all title and interest in the subject of the gift. Marshall v. Russell, 93 Tenn. 261, 25 S. W. 1070.

In the instant case J. M. Craig not only kept the deeds in his possession, but also kept the land in his possession by renting the tracts deeded to his children to them, and which they occupied as tenants to the time of his death.

"The effect of a valid delivery is to place the subject of the gift under the control and dominion of the donee, and his title and right to possession becomes . . . irrevocable." Chandler v. Roddy, 163 Tenn. 338, 43 S. W. (2d) 397, 400.

The defendant contends that there was delivery of the deeds because the circumstances are such that it clearly appears that J. M. Craig intended that the deeds should take effect without delivery.

We have stated above the circumstances which we think clearly indicate otherwise. In addition to those circumstances of retaining possession of the deeds and the lands is the circumstance that he sold the land conveyed to his daughter, Mrs. Davis, and was in possession of the proceeds of the sale at the time of his death.

Nothing had been done by J. M. Craig which put it beyond his power to recall or annul any or all of the deeds which had been executed conveying the lands to his children. Nothing had been done which could divest his title or challenge his right to or control over the property.

We, therefore, are of the opinion that the Chancellor was correct in finding and decreeing that none of the four deeds executed by J. M. Craig and wife to any of the four vendees were delivered and were found after J. M. Craig's death, with the exception of the deed to the defendant Homer Craig, undelivered in a dresser drawer at his home, and that at all times said deeds were subject to the will and control of J. M. Craig.

The defendant contends that the Court was in error decreeing upon the verdict of the jury that, Homer Craig on or about March 10, 1945, without the knowledge, consent or approval of J. M. Craig and by fraud procured the deed executed to him by J. M. Craig on August 20, 1928.

The record is that J. M. Craig, at the time of his death was 80 years old and died on March 31, 1945. Dr. Ousler his physician states that he had been in failing health for some months prior to his death; that he started treating him in December, 1944, and continued to treat him during January, February and March, 1945; that he suffered with a complication of diseases, ulcerated stomach, high blood pressure, heart trouble and prostate gland trouble; that he attended him on March 8, 9, 10, 11, 12, 16, 18, 20, 22, 24, 26, 28, 29, and 30th. Evidently Mr. Craig was a very sick man at the time Homer Craig states that the deed of August 20 1928, was delivered to

him. Homer Craig lived in the home with him and had access to the deed in question.

██ Under these circumstances the burden of proof was upon him to show his good faith and that the transaction was not tainted with fraud, and that said deed was delivered to him by his father.

The Court properly charged the jury on this question as follows:

"A child may accept a conveyance from his father of real estate, but when the deed is challenged by a party having a strong equity, that is a claim, and, when there are circumstances of suspicion to the conveyance, the burden is on the child to show that the contract or conveyance was made in good faith and that the transaction is not tainted with fraud."

This charge is in accord with the authorities.

In Atchley v. Rimmer, 148 Tenn. 303, 255 S. W. 366, 369, 30 A. L. R. 1481, it is said:

"The rule seems to have universal approval by the courts that the fact that a person, claiming property as a gift, has it in his possession after the death of the alleged donor, has little, if any, weight, where the claimant has has access to the property and effects of his alleged donor during his last sickness or after his death, or where its possession can be reasonably accounted for in any other way. Numerous cases in support of this rule might be cited. Maxler v. Hawk, 233 Pa. 316, 82 A. 251, Ann. Cas. 1913B, 559; Chambers v. McCreary, 106 F. 364, 45 C. C. A. 322. To establish a gift there must be evidence free from personal interest and not equivocal in character that the property claimed was delivered to donee during the donor's life, and this rule is not met by the possession of the property, where the

possessor has had an opportunity to acquire the possession by other means. In order for this rule to obtain, it is not necessary that the Court should be able to say that the act of the possessor was improper or dishonest, but for reasons of public policy the proof must show the possession was obtained by delivery with an intention to give.''

■ This issue was properly submitted to the jury and a verdict rendered against the defendant. The verdict is approved by the Chancellor and will not be disturbed by this Court.

The complainant contends that the Court was in error in holding and decreeing that the deed from J. M. Craig to Homer Craig conveying the house and lot in Humboldt is a valid deed and that J. M. Craig had sufficient mentality at the time of the execution of the deed to know the import thereof and that Homer Craig did not procure the deed by fraud and undue influence.

We are unable to agree with this contention.

■ It is not necessary to cite the authorities that this Court is not authorized to disturb the verdict of a jury, approved by the Trail Court, if there is any material evidence to support the same.

We think it proper for the Court to say that there are many highly suspicious circumstances connected with the execution of this deed of gift. The father was a very old and sick man at the time of its execution, dying shortly after its execution from a complication of diseases, which had afflicted him for months theretofore.

The evidence of the Notary Public is that no audible sound was made by Mr. Craig during the time he was in the home for the purpose of taking the acknowledgment.

The only evidence as to this deed is that of the son and his wife. The deed was prepared by Mr. Avery at the direction of the son and not of the father. The whole transaction was carried out secretly and without any knowledge upon the part of the three daughters and concealed from them until after the father's death. The evidence is that the father provided a home for his son and his wife. The three daughters had been dutiful and attentive to their father and there is no reason we can find in the record for a preference upon the father's part to his son.

But whatever the Court may think of these suspicious circumstances, we are bound by the rule above stated and to find that there is evidence upon which reasonable minds may differ.

The evidence of Homer Craig is that he was directed by his father, J. M. Craig, to have Mr. Avery to prepare the deed conveying the Humboldt property to the defendant; that the deed was prepared and executed voluntarily by his father and that J. M. Craig was rational at the time of its execution. He is corroborated in this testimony by his wife.

Dr. Ousler, who saw J. M. Craig every day or every other day, for a number of days, immediately before his death, testified that he was rational up to a few days before his death, when he went into a coma. Other witnesses testified to the same effect.

The Court properly charged the jury that the burden of proof was upon the defendant upon that issue.

Therefore, under the rule, there being some material evidence to support the verdict the complainants' assignment of error is overruled.

After the adjudication of the matters hereinbefore set out the Chancellor ordered a reference requiring the Clerk & Master to take proof and report:

1. Whether the lands owned by the said J. M. Craig are of such kind and character that the same can be divided in kind among the respective owners thereof.

2. Whether it is manifestly to the best interest of all parties that the lands be sold for partition and division of the proceeds.

3. What improvements, if any, have any of the parties in interest put on the respective parcels that permanently enhanced the value thereof, in what amount, and whose expense?

4. What advancements, if any, were made by the said J. M. Craig to Homer Craig and with which he should be charged in the settlement of the estate?

5. How much, if anything, any of the children or heirs at law are indebted to the estate of J. M. Craig, and for what.

In complainants' original bill it is alleged that if, for any reason, the conveyance from J. M. Craig to Homer Craig of the Humboldt property cannot be set aside, the said property constitutes advancements made by the said J. M. Craig in his life time to the said Homer Craig, and that in winding up the estate he should be made to account for the full value of same before he is permitted to share in the remainder of the estate and to the end that each and all of said children may share equally.

This question was not adjudicated by the Chancellor, but as the case is to be remanded that the order of reference may be carried out, it is proper for this Court to determine this question in order that full justice may

be had between all the parties in the final settlement of the estate.

If, as a matter of law, the gift by J. M. Craig to Homer Craig of the Humboldt property constitutes an advancement the order of reference would require the Clerk & Master to take proof and report as to the value of that property as of the time of the conveyance.

The only evidence throwing any light on this question is that of Mrs. Homer Craig and her husband.

Mrs. Craig testified that J. M. Craig said to Homer Craig: "I want you to get Mr. Avery to make you a deed to this place, I want to give it to you"; that after the deed was prepared Homer Craig read it to J. M. Craig; that J. M. Craig said it was all right and asked them to call the Notary Public.

Homer Craig testified that J. M. Craig told him: "He said he wanted Laverne and me to have the place over there" meaning the Humboldt property; that he went to Alamo and had the deed prepared; that on his return he read it to his father who said it was all right.

The Notary Public, who took the acknowledgement to the deed, testified that J. M. Craig made no audible sound while he was present for the purpose of taking the acknowledgment.

This is the record as to the execution of the deed.

On the subject of advancements by parents to children, it is said in Pritchard on Wills, Sec. 768:

"An advancement is an irrevocable gift made by a parent to a child in total or partial anticipation of such child's future share in the parent's estate, and to be taken into account in the final distribution or partition thereof. Under the English statute of distributions, advancements made by a father in his lifetime towards the

distributive share of any of his children, were to be deducted in making distribution of the father's estate in case he died intestate; and this rule is of effective operation in this State as part of the common law. It is, moreover, declared by statute that absolute equality shall be observed in the division of the estates of deceased persons, except where a will has been made and its provisions render equality impossible. And all advancements, whether by settlement or otherwise, in the lifetime of the deceased, or by testamentary provision, are required to be collated and brought into contribution in the partition and distribution of the real and personal estate of the deceased; those in real estate, first in the partition of real estate, and those in personal estate in the distribution of the personal estate. Advancements in the different classes of property are thus required to be separately collated and accounted for, so as to equalize the division of each class as nearly as possible. But, it is further provided, that should the value of the advancements in real estate exceed the child's share, the overplus shall be collated and brought into contribution in the distribution of the personal estate; and should the value of such advancements in personal estate exceed the share of such child in the personal estate, then the excess shall be brought into contribution in the partition of the real estate.''

On the question of intention upon the part of the parent the same authority says in Sec. 770:

''Questions of advancement are always questions of the intention of the parent at the time the property is received by the child, to be arrived at from a survey of the conduct and conversation of the donor at and about that time; and the character of the transaction

must depend on its own circumstances, and cannot be altered by subsequent events or purposes. In the absence of proof, the intention is supplied by the presumption which the law raises in furtherance of its policy of equality, that when a parent makes a gift to a child it is intended as an advancement which must be accounted for by the child receiving it, in the division of the parent's estate, rather than a simple gift to such child of so much in excess of the other children; and this presumption stands until overcome by clear and satisfactory proof that the donor did not intend it as an advancement. . . ."

In the case of Johnson v. Patterson, 81 Tenn. 626, Mrs. Patterson was at the home of her father, Andrew Johnson, Sr., and just before she left to return to her home her father gave her a deed in an envelope and told her not to open it until she got home.

This deed conveyed to Mrs. Patterson, his eldest daughter a valuable tract of land which showed that it was made "for the love and affection I entertain for my daughter, Martha J. Patterson, I do hereby give, transfer and convey to her, her heirs and assigns, etc."

The Court held that the gift was an advancement and its value should be accounted for by Mrs. Patterson in the settlement of her father's estate.

In determination of the question the Court said:

"An advancement is defined by the authorities to be, "an irrevocable gift, by a parent, who dies afterwards intestate, of the whole or a part of what it is supposed the child will be entitled to on the death of the parent making the advancement"; See Yancey v. Yancey, 5 Heisk. 353, 357, 13 Am. Rep. 5; Meigs' Dig. by Milliken, vol. 1, p. 74, sec. 11, and Wait's Act & Def., vol. 1, 205,

sec. 1, and cases cited. A shorter definition is, a gift by a parent in presenti, of a portion or all of the share of his child in his estate which would fall to such child at the parent's death by the statute of distribution or descent.

■ "It is seen from this definition that the fact that there is a gift and cenveyance of the title does not exclude the idea of an advancement, but that a gift and the title conveyed is an essential feature of it. In order to exclude the idea of an advancement, there must be shown not only a gift, but something additional—a gift, with a purpose that the property so given shall go to that child as something over and above the share of the other children of the donor. The purpose must be made out by satisfactory and affirmative testimony, such as the nature of the case will naturally demand, and if the fact be so, will naturally supply.

■ "In view of our statute law on this subject, as well as on sound principles, it is settled that when a gift is shown by parent to a child the presumption of law is that it is intended as an advancement—it is a prima facie case (Morris v. Morris, 9 Heisk. 814, 817) which means, that a case of advancement is fully made out, justifying or demanding a decree by a court to that effect until the contrary case is made out by a contrary purpose. If the case should stand in equipoise on the proof, then the party seeking to assert the over portion having the affirmative must fail.

"This is evident from the requirements of the Code as well as the principle underlying all our decisions on this question, as will be seen by the cases: Meigs' Digest, by Milliken, vol. 1, p. 75, sec. 4. The language of the Code, section 2431 [Code 1932, Sec. 8402] would

seem to demand that even a strong case, very clear and weighty evidence, should be given in order to overturn the presumption of our law, and the evident policy and purpose underlying it. It is that 'absolute equality shall be observed in the division of the estates of deceased persons, except where a will has been made and its provisions render equality impossible.' The next section [Code 1932, Sec. 8402a] requires 'all advancements, whether by settlement or otherwise, in the lifetime of the deceased, or by testamentary provision, shall be collated and brought into contribution in the partition and distribution of the real and personal estate of the deceased; those in real estate first in partition of the real estate, and those in personal estate in the distribution of the personal estate.' Section 2433 [Code 1932, Sec 8403] provides for this equality, by requiring collation of an advancement in real estate with the personal estate, where the advancement in real estate exceeds the child's share, and e converso where the amount in personalty shall be found to exceed such share. And by next section [Code 1932, Sec. 8404] it is even provided that 'where a power or trust is granted the parent to bestow property conveyed or settled by the instrument creating the power or trust, in favor of one or more children of such parent, any property given under such power or trust to a child shall be collated and brought into contribution by such child claiming a share in the distribution of the property of the parent.'

"It might well be held on a literal construction of the first section, that the equality provided for could not be defeated at all, except where a will had been made rendering equality impossible, and in view of the other sections, that all property received by a child in advancement of a parent's death, must be brought into the ac-

count and charged as an advancement against the child receiving it. Certain it is, these provisions require a clear and unmistakable case of a contrary purpose on the part of the donor to exclude the operation of this well defined policy of our law, that there shall be absolute equality observed in the division of the estates of deceased persons.''

In the instant case the recital of consideration is: ''That for the love and affection I have for my son Homer Craig, and the further fact that I have been living in the home with the said son for the past 18 months, and he and his wife have cared for and waited on me, I. J. M. Craig have this day granted, aliened and transferred, etc.''

The Court has heretofore stated the testimony of Homer Craig and his wife as to the request of J. M. Craig that the deed of gift be prepared. There is no evidence of any statement of J. M. Craig as to a consideration, in the absence of which, the gift, would presumably be for love and affection. But the deed contains a consideration for services rendered by Homer Craig and his wife. There is no evidence that such consideration was discussed or directed by J. M. Craig in his request that the deed be prepared.

In the cross examination of Homer Craig, the following occurred:

''Q. And you went to Mr. Avery's office and you had the deed written? A. I did.

''Q. How come you to have Mr. Avery to put in there for the love and affection? A. I didn't have Mr. Avery put anything in there.

''Q. You didn't tell him to put anything in there? A. I did not.''

So it is that the consideration expressed in the deed not having been suggested or directed by J. M. Craig expresses no intention upon his part that the gift should not be accounted for in the settlement of his estate.

In the absence of evidence to show a clear and unmistakable intention upon the part of J. M. Craig that the gift of the house and lot in Humboldt was intended to be over and above the share of his other children and not be accounted for in the settlement of his estate, the gift must be held to be an advancement.

In the case of Johnson v. Patterson, supra, there was evidence by a Mr. Fowler that in conversation Ex-president Johnson spoke tenderly of his daughter, Mrs. Patterson, and of her services to him as mistress of the Presidential Mansion at Washington and keeper of his home during the war at Nashville; that she had shown great self denial and her care and economy had saved him much money and said:

"In the course of my business I have become the owner of the farm on which she now resides, and I intend it for her as some compensation for her services rendered during my administration."

After discussing the weight of this evidence and a doubt of its competency the Court said:

"But conceding it is not too remote, for the sake of the argument, it is still not inconsistent with the idea, that this valuable farm was intended to be given and its profits enjoyed in advance of such a gift to his children, and these advantages might well be a reward for services rendered by a dutiful daughter. This might well have been done, with no intention to express anything on the real question as to whether she should account for the actual value of the farm after his decease."

Also in the cited case it appeared that a package containing the deed of the Clerk & Master to Mr. Johnson to the land in question was seen in his trunk with the following lines written on it: "This I give to my daughter Martha for her kindness and great respect for her father and I do not wish her interferred with, Andrew Johnson".

The Court said:

"This inscription fails, however, to make out the case claimed. It was only a declaration of a purpose—or could amount to nothing more—as it could not have been operative as a conveyance. It cannot be made to mean that when given it should not be accounted for. If a man of Mr. Johnson's intelligence had intended this purpose, it would have been perfectly easy to say so, and that in apt and proper words to express his meaning, and the fact he has not done so in the deed together with the other circumstances of the case we have referred to, is totally inconsistent with the existence of such a purpose in his own mind."

In this case the burden of proof was upon the defendant to show by a preponderance of the evidence that the deed of gift was not to be taken as an advancement, and to make out a clear and unmistakable case of a contrary intention. This the defendant has failed to do.

Therefore, upon remand in the execution of the order of reference decreed by the Chancellor, the Clerk & Master will take proof as to the value of the house and lot in Humboldt at the time of the execution of the deed and will charge the same as an advancement to the defendant together with such other sums, if any, as the proof taken may show were advanced to the defendant by the deceased.

The defendant contends that the Court was in error in ordering a reference requiring the Clerk & Master to report what advancement, if any, were made by J. M. Craig to Homer Craig on the ground that there was no proof that any such advancements were made.

We think the order was properly made. There was evidence tending to show that at one time J. M. Craig deposited to the credit of the defendant Homer Craig in a bank in Big Springs, Texas an amount in excess of $800; also a receipt to J. M. Craig from J. D. Senter, Attorney at Humboldt for $75 for representing the defendant Homer Craig in Court.

The assignments of error are overruled. The decree of the Chancery Court, as modified, is affirmed. The cause is remanded to the Chancery Court for proceedings there consistent with this opinion.

The costs of the cause, including the costs of this appeal, will be paid out of the funds of the estate of J. M. Craig.

Anderson, P. J., and Hamner, J., concur.