## COX et al. v. McCARTNEY et al.—
## 236 S. W. (2d) 736.

Middle Section.  June 17, 1950.

Rehearing denied September 20, 1950.

236

Price & Price, of Johnson City, M. Paul Moody, of Bristol, for appellants.

Burrow & Burrow, of Bristol, for appellees.

FELTS, J.  This suit was brought by heirs at law and by a creditor of W. S. Cox, deceased, to set aside two deeds of gift by him of his real estate and to administer his estate in the chancery court.  The creditor, Marie Faulkner, held a note against him and the other complainants were three of his brothers and one of his sisters. Defendants were the grantees in these deeds.  The ground of attack upon the deeds was that they had never been delivered.

Answer was filed and the cause was heard before the Chancellor upon oral testimony of numerous witnesses introduced in court.  He found that the deeds had not been delivered and decreed that they were void and should be removed as a cloud upon the title of the heirs of W. S. Cox.  Defendants appealed and have assigned a number of errors challenging this finding of the Chancellor.  Thus the single issue presented is whether there had been a valid delivery of these deeds.

The Chancellor filed an opinion which contains a full and accurate review of the testimony and an excellent discussion of the applicable legal principles.  We think the evidence fully sustains his findings of fact and we concur in them and in his conclusion of law.  We summarize the facts and circumstances which were found by

the Chancellor and which we think are established by the preponderance of the evidence.

W. S. Cox was about 75 years of age at the time of his death. He had no children and his wife had predeceased him. He owned a mountain farm of about 158 acres located in the Third District of Sullivan County, where he had made his home. This tract has valuable timber on it and is estimated to be worth about $12,000. He also owned a tract of bottom land in the Sixteenth District of that county which contains about 60 acres. This tract is also estimated to be worth $12,000. He seems to have had little or no property other than these two tracts of land.

In his latter years he became more or less disabled and for some two years before his death he lived in Bristol in the home of his sister, defendant Rebecca Cox McCartney. Floyd Cox, his nephew, whom he had partly reared, was also living there. These deeds were made February 15, 1947, and W. S. Cox died intestate on May 7, 1948.

By one of these deeds he gave to Floyd Cox the fee simple estate in the mountain farm. By the other he gave the bottom farm to Floyd Cox and Mrs. McCartney, conveying to her a life estate in a one-half undivided interest and to Floyd Cox the remainder in fee in that one-half and a fee simple estate in the other one-half interest. It appears that these deeds were written by Mr. M. Paul Moody, an attorney and notary public, who carried them to Mrs. McCartney's home and took the acknowledgment of W. S. Cox. He and a Mr. Graves also witnessed Cox's signature. They left the deeds with Cox and did not know whether he ever delivered them to the grantees or not.

The only testimony tending to prove such a delivery was that of the grantees or donees themselves. They said that after Moody and Graves left they went into the room of W. S. Cox and he handed them the deeds—handed Mrs. McCartney the deed to the bottom farm and handed Floyd Cox the deed to the mountain farm; that Floyd read that deed, handed it to her and asked her to keep it and take care of it for him; and that she put it and the other deed in her trunk where she was keeping the grantor's old deeds and other papers for him.

But neither of the donees undertook to detail any conversation or to tell just what was said by W. S. Cox when he handed them the deeds. Mrs McCartney testified on direct examination: "Q. How did you get that deed (the one to both of them) in your hands? A. Well, Bill gave it to me. Q. What did he say when you went into his room? A. He just told me he was giving me this deed, and he didn't say what to do and what not to do." Referring to the deed to Floyd, she testified: "Q. Did he say anything to him when he handed it to him? A. Well, he and Floyd had a little talk and he advised him what to do in the future, and he told Floyd he wouldn't have to work as hard as he had, and he wanted him to take care of it."

On his direct examination Floyd Cox said that some time before the deeds were written his uncle had said, "I am going to fix this place (mountain farm) for you." He also said that his uncle had handed him this deed in the same way he had handed the other one to Mrs. McCartney; that he glanced over it, handed it to her and asked her to put it with hers and keep it for him. Asked about recording the deed to him, he said: "Well, I figured if he had wanted it recorded he would have advised me."

But all of the evidence except the direct examinations of the donees tends to show that W. S. Cox did not intend to make an absolute delivery of these deeds, that he did not intend to divest himself of his title or to pass it to the donees, but that he intended to retain the ownership, control, and power to dispose of these farms up to the time of his death, and the donees so understood the transaction.

He did actually control the land, renting it, receiving the rents, and paying the taxes up to his death. He had a number of conversations with a number of different persons about selling the timber and carried on negotiations with real estate agents looking to the sale of the land. Floyd Cox on cross examination admitted that W. S. Cox "still controlled" the land and that he would not have objected if W. S. Cox had sold the timber or the land. Mrs. McCartney said that she would have given the deeds back to W. S. Cox at any time he asked her for them and that she understood she did not get anything under them until his death. She said, "I didn't really feel like it was mine to do with as I wanted as long as he lived."

W. S. Cox went to a hospital in Richmond, Virginia, remained there a short while, and was brought back to the home of Mrs. McCartney about a week before his death. While at that hospital he told Mrs. McCartney that he intended to give her both of these farms and to have deeds prepared accordingly. She had Mr. Moody prepare two deeds to convey to her the fee simple title in these farms. These deeds were dated April 28, 1948. But neither of them was executed because W. S. Cox was too ill to execute them when Mr. Moody came to see him for this purpose a day or two before his death.

The delivery of a deed is, of course, essential to its validity. An undelivered deed passes no title and is of no effect. A deed does not become operative until it has been delivered with the intention that it shall become effective as a conveyance. Delivery is a matter of intention manifested by conduct, words, and acts of the grantor; and it is to be inferred from all the circumstances appearing. Wilson v. Winters, 108 Tenn. 398, 67 S. W. 800; Couch v. Hoover, 18 Tenn. App. 523, 531-534, 79 S. W. (2d) 807, 811-813, and numerous cases there cited.

The test of delivery is the power of the grantor of a deed to recall it. Has he parted with dominion or control over it? If so, there has been delivery. But if he retains the right to control or reclaim the deed, there is no delivery even though the grantor never undertook to exercise such right. Traders Nat. Bank v. First Nat. Bank, 142 Tenn. 229, 234, 217 S. W. 977, 978, 9 A. L. R. 382, 383; Miller v. Proctor, 24 Tenn. App. 439, 447, 448, 145 S. W. (2d) 807; Laman v. Craig, 30 Tenn. App. 353, 362, 206 S. W. (2d) 309, 313.

The rule is well settled in Tennessee that it is the intention of the grantor of a deed that determines whether delivery of the instrument is absolute or conditional, even though such delivery be made to the grantee of the deed. Tanksley v. Tanksley, 145 Tenn. 468, 470, 239 S. W. 776; Miller v. Morelock, 185 Tenn. 466, 474, 206 S. W. (2d) 427, 431.

In the circumstances here appearing we think it is quite clear that there was no valid delivery of these deeds. The unsupported testimony of a donee will ordinarily be deemed insufficient to establish delivery. Especially is this so where the donee had access and could have obtained possession of the deed or the gift without

delivery by the donor. Atchley v. Rimmer, 148 Tenn. 303, 255 S. W. 366, 30 A. L. R. 1481; Miller v. Proctor, 24 Tenn. App. 439, 448, 145 S. W. (2d) 807.

But assuming that W. S. Cox handed these deeds to the donees under the circumstances related by them, still a valid delivery is not made out. The utmost effect would be only a conditional delivery with the right of the grantor to reclaim the deeds. Tanksley v. Tanksley, supra; Miller v. Morelock, supra. The proof leaves no doubt that he intended, and the grantees understood, that these deeds were not to take effect or to operate as a present conveyance of his land to them and that he still retained the title to it and the right to dispose of it.

All of the assignments of error are overruled and the decree of the Chancellor is affirmed. The costs of the appeal are adjudged against appellants and the surety on their appeal bond. The cause will be remanded to the chancery court for further proceedings.

## On Petition to Rehear.

Appellants have filed a petition to rehear complaining of our holding that the evidence failed to prove that the grantor had made a valid delivery to them of the deeds under which they claimed. In support of the petition learned counsel make an able and earnest argument, but it is only a reargument of matters already thoroughly argued by them and considered and determined by us. It points out no new matter of law or fact overlooked, but only reargues things which counsel say were improperly decided by us.

"The office of a petition to rehear is to call the attention of the court to matters overlooked, not to those things which the counsel supposes were improperly

decided after full consideration.'' Louisville & N. Railroad Co. v. United States Fidelity & Guaranty Co., 125 Tenn. 658, 691, 148 S. W. 671, 680; Gulf, M. & O. R. Co. v. Underwood, 182 Tenn. 467, 476, 187 S. W. (2d) 777, 780; Rules of Supreme Court, rule 32, 185 Tenn. 879; Colbaugh v. State, 188 Tenn. 103, 112, 216 S. W. (2d) 741; Black v. Love & Amos Coal Co., 30 Tenn. App. 377, 389, 206 S. W. (2d) 432, 437, and cases there cited.

'' ' ''If re-hearings are to be had, until the counsel on both sides are entirely satisfied, we fear that suits would become immortal, and the decision be postponed indefinitely.'' ' Story's Eq. Pl., 8th Ed., sec. 421, p. 395, note. Compare Andrews v. Crenshaw, 51 Tenn. 151, 153.'' Gulf, M. & O. R. Co. v. Underwood, 182 Tenn. 467, 476, 187 S. W. (2d) 777, 780.

The petition is denied at petitioners' cost.

Howell and Howard, JJ., concur.