# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

FILED

May 21, 1997

Cecil W. Crowson
Appellate Court Clerk

WAYNE ARLE CUNNINGHAM,  )
  )
    Plaintiff/Appellant,  )
  )
  )  Davidson Chancery
  )  No. 94-1805-I
VS.  )
  )
  )  Appeal No.
  )  01A01-9509-CH-00411
DEPARTMENT OF SAFETY,  )
STATE OF TENNESSEE,  )
  )
    Defendant/Appellee.  )

APPEAL FROM THE CHANCERY COURT FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR

For the Plaintiff/Appellant:

Mr. Howard B. Barnwell, Jr.
Chattanooga, Tennessee

For the Defendant/Appellee:

Charles H. Burson
Attorney General and Reporter

Rebecca Lyford
Assistant Attorney General

## REVERSED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves a father's efforts to regain possession of his 1986 Corvette that was seized incident to his son's arrest for selling marijuana to an undercover officer. The Commissioner of Safety, overruling an administrative law judge's decision to return the automobile, determined that the father and the son co-owned the Corvette and ordered its forfeiture subject to the father's and a secured creditor's interests. The Chancery Court for Davidson County affirmed the forfeiture order, and the father appealed to this court. We have determined that the record does not contain substantial and material evidence supporting the Commissioner's conclusion that the son was the co-owner of his father's Corvette. Accordingly, we reverse the forfeiture order.

## **I.**

Wayne Arle Cunningham operates a video machine business in Rhea County. In late 1992, he decided to buy a 1986 Corvette he found at a local car lot because he had always wanted one. Mr. Cunningham purchased the Corvette in mid-November 1992 using money borrowed from the First Bank of Rhea County. The title certificate identified Mr. Cunningham as the registered owner and the First Bank of Rhea County as the first lienholder. Only Mr. Cunningham and his wife were listed as covered drivers on the insurance policy covering the Corvette.

Wayne Alan Cunningham was Mr. Cunningham's only child. Mr. Cunningham provided most of his son's support even though his son was twenty years old, married, and the father of two children. Mr. Cunningham owned the house where his son lived and employed him part-time to make deliveries and to run errands. Even though Alan Cunningham owned his own automobile, Mr. Cunningham gave him a set of keys to the Corvette and permitted him to drive it whenever he wished. Mr. Cunningham kept the Corvette at his house and paid for its maintenance. When Alan suggested installing a new stereo system in the Corvette, Mr. Cunningham bought the components for his son to install.

On May 16, 1993, Alan Cunningham sold 6.5 grams of marijuana to an undercover officer of the Rhea County Sheriff's Department. According to the undercover officer, the sale took place in the Corvette. The officer stated that he had been in the Corvette on several times and that he observed Alan Cunningham driving the automobile on numerous occasions.

On August 4, 1993, Mr. Cunningham asked his son to have the Corvette's oil changed. Alan Cunningham picked up the car at his father's house and was driving it to be serviced when the law enforcement authorities seized the automobile on the grounds that it had been used to facilitate the May 16, 1993 drug transaction. When Mr. Cunningham learned of the seizure, he inquired "What am I going to have to do to get my car back?" The authorities informed him that he would have to "go to court."

Mr. Cunningham and First Bank of Rhea County filed timely claims for the Corvette with the Department of Safety. On February 8, 1994, an administrative law judge filed an initial order finding that Mr. Cunningham owned the Corvette and that he did not know about or consent to the use of his car to facilitate the sale of illegal drugs. Accordingly, the administrative law judge directed the Department to return the Corvette to Mr. Cunningham. The State appealed the initial order, and on May 13, 1994, the Commissioner of Safety entered a final order forfeiting the Corvette. The Commissioner concluded that Mr. Cunningham and his son were "co-owners" of the Corvette and that the forfeiture would be subject to Mr. Cunningham's fifty percent ownership interest and First Bank of Rhea County's lien. Mr. Cunningham sought judicial review of the Commissioner's order, and the Chancery Court for Davidson County affirmed the forfeiture on the ground that the record contained substantial and material evidence supporting the Commissioner's finding that Mr. Cunningham and his son were "co-owners" of the Corvette.

## II.

Mr. Cunningham takes issue on this appeal with the evidentiary support for the Commissioner's conclusion that Alan Cunningham was a "co-owner" of the Corvette. In order to resolve this question, we must consider not only the type of proof required to establish ownership but also the parties' respective burdens of proof or of going forward with the evidence.

## A.

Forfeiture proceedings such as those permitted by the Tennessee Drug Control Act are drastic, extraordinary remedies. The courts construe forfeiture statutes strictly, *Redd v. Tennessee Dep't of Safety,* 895 S.W.2d 332, 335 (Tenn. 1995); *Hays v. Montague,* 860 S.W.2d 403, 406 (Tenn. Ct. App. 1993), and accordingly forfeitures must fall within the letter and spirit of the law in order to be upheld. *Biggs v. State,* 207 Tenn. 603, 608, 341 S.W.2d 737, 740 (1960); *Blackmon v. Norris,* 775 S.W.2d 367, 369 (Tenn. Ct. App. 1989).

The State has the initial and ultimate burden of proving that seized property was used or intended to be used to facilitate a violation of the drug laws. *See* Tenn. Code Ann. §§ 53-11-201(d)(2), -451(a)(4) (Supp. 1996).[1] If the State presents a prima facie case for forfeiture, the burden of going forward with the evidence shifts to the claimant to prove either that the property is not subject to forfeiture or that he or she has a good faith interest in the property and that he or she did not know or have reason to know that the property was being used to facilitate a violation of the drug laws. *See* Tenn. Code Ann. § 53-11-201(f)(1); Lewis L. Laska & Brian K. Holmgreen, *Forfeitures Under the Tennessee Drug Control Act,* 16 Mem. St. U.L. Rev. 431, 490 (1986) ("Laska & Holmgreen"). If the claimant presents prima facie evidence that the property should not be forfeited, then the burden of going forward with the evidence shifts back to the State to rebut the claimant's evidence. If the State does not rebut the claimant's evidence, the property cannot be forfeited and must be returned. Tenn. Code Ann. §§ 53-11-201(d)(2), -201(e)(1); Laska & Holmgreen, 16 Mem. St. U.L. Rev. at 490.

---

[1]The forfeiture procedures changed after the forfeiture in this case. Effective on January 1, 1997, forfeitures of conveyances seized under the Drug Control Act are governed by Tenn. Code Ann. §§ 40-33-101 through 40-33-214 (Supp. 1996) rather than by the statutory provisions discussed in this opinion.

**B.**

"Ownership" is a purely legal concept. 3 Roscoe Pound, *Jurisprudence* 129 (1959). It connotes a "bundle of rights" with regard to the property. *Woods v. M. J. Kelley Co.,* 592 S.W.2d 567, 570 (Tenn. 1980); Ray A. Brown, *The Law of Personal Property* § 1.5, at 6 (3d ed. 1975). Included in the bundle of rights are (1) the right of possession, enjoyment, and use, (2) the unrestricted right of alienation, and (3) the power of testimonial disposition. *State ex rel. Elvis Presley Int'l Mem'l Found. v. Crowell,* 733 S.W.2d 89, 96-97 (Tenn. Ct. App. 1987).

Proof of ownership generally involves evidence with regard to possession and exercise of one or more of the prerogatives in the bundle of ownership rights. Thus, ownership is a question for the trier of fact to determine from the evidence. In order to determine ownership of a vehicle, triers of fact may consider and weigh evidence relating to (1) the circumstances surrounding the vehicle's purchase,[2] (2) the registration of the vehicle,[3] (3) all aspects of insuring the vehicle,[4] (4) all parties' financial stake in the vehicle, (5) the actual possession of the vehicle, (6) the responsibility for bearing the expense of operating, maintaining, and licensing the vehicle,[5] and (7) the ultimate right to control the vehicle and to make major decisions concerning the vehicle such as its use and restrictions on its use or the sale or other disposition of the vehicle.

---

[2]*See Polland v. Safeco Ins. Co.,* 52 Tenn. App. 583, 588, 376 S.W.2d 730, 732 (1963); Laska & Holmgreen, 16 Mem. St. U.L. Rev. at 492.

[3]The fact that a vehicle is registered in a particular person's name is not conclusive evidence of ownership. *Smith v. Smith,* 650 S.W.2d 54, 56 (Tenn. Ct. App. 1983); *Polland v. Safeco Ins. Co.,* 52 Tenn. App. at 588, 376 S.W.2d at 732. Courts understand that registration can be used as a subterfuge by persons engaging in "forfeiture planning." *Felder v. State,* 515 So. 2d 17, 18-19 (Ala. Civ. App. 1997); *Kam Seafood Co. v. State,* 496 So.2d 219, 219 (Fla. Dist. Ct. App. 1986); *People v. 1991 Chevrolet Camero,* 620 N.E.2d 563, 568 (Il. App. Ct. 1993); *Strand v. Chester Police Dep't,* 687 A.2d 872, 877 (Pa. Commw. Ct. 1997). Nonetheless, courts consider nonsuspicious record title as a material factor in cases of this sort. *State v. 1977 Pontiac,* 294 S.E.2d 660, 661 (Ga. Ct. App. 1982).

[4]*United States v. One 1986 Chevrolet Monte Carlo,* 817 F. Supp. 729, 732 (N.D. Ill. 1993); *State v. One (1) Ford, Econoline,* 381 A.2d 387, 390 (N.J. Super. Ct. App. Div. 1977).

[5]*State v. One (1) Ford, Econoline,* 381 A.2d at 390.

# C.

The State made out a prima facie case that the Corvette was subject to forfeiture under the Tennessee Drug Control Act by presenting uncontradicted proof that Alan Cunningham conducted an illegal drug transaction in the automobile. Accordingly, the burden of going forward with the evidence shifted to Mr. Cunningham to establish that he was the innocent owner of the Corvette and that he did not know, and had no reason to know, that his son was using the automobile to facilitate an illegal drug transaction.

There is no suggestion in the proof that Mr. Cunningham acquired title to the Corvette as a subterfuge to circumvent the forfeiture statutes or that he had any knowledge or reason to believe that his son was using the Corvette to sell marijuana. Accordingly, the fate of Mr. Cunningham's claim rested on his ability to establish that he was the Corvette's owner. To support his claim, Mr. Cunningham proved that he paid for the automobile, that he registered the automobile in his name only, that he insured the automobile, and that he was solely responsible for the maintenance and upkeep of the automobile. He also proved that the Corvette was kept at his house, that he used the Corvette whenever he wished, and that he controlled the use of the Corvette by others.

Mr. Cunningham's evidence was sufficient to establish his claim to the Corvette. Accordingly, the burden of going forward with the evidence shifted back to the State to prove that Mr. Cunningham was not the sole owner of the automobile. To carry this burden, the State pointed out that Mr. Cunningham consulted his son when he purchased the Corvette, that Mr. Cunningham gave his son a set of keys to the Corvette and permitted him to use it at will, and that Alan Cunningham played a role in adding after-market accessories to the automobile.

The privilege of using property is only one of many attributes of ownership. As the State points out in its brief, an equally, if not more, significant factor in establishing ownership is who exercises ultimate control over the property. *Farley v. Commissioner,* App. No. 01A01-9201-CH-00004, 1992 WL 151446, at *2 (Tenn. Ct. App. July 2, 1992) (No Tenn. R. App. P. 11 application filed). This

record contains no evidence that Mr. Cunningham turned over the ultimate control of the Corvette to his son. To the contrary, the record contains substantial and material evidence that Mr. Cunningham determined who used the automobile, when and where it would be serviced, and whether after-market accessories would be installed in the car.

The strongest evidence in the State's favor is Alan Cunningham's liberal use of the Corvette. He had his own set of keys and apparently used the Corvette at will. Accordingly, the State argues that the "vehicle was as much for [Alan Cunningham's] use as his father's." Perhaps so. This court, however, is unprepared to hold that a person using property with another's permission acquires some sort of ownership interest in the property. We know of no legal precedent for such an extreme conclusion, and the Commissioner has cited none. Accordingly, we find that this record does not contain substantial and material evidence supporting the Commissioner's conclusion that Alan Cunningham was the "co-owner" of his father's Corvette.

## III.

The State also asserts that the evidence supports the conclusion that Mr. Cunningham in essence gave his son an interest in the Corvette. In order to constitute an inter vivos gift, the donor must intend to make a gift, must deliver the property to the donee, and must relinquish to the donee all rights to control the property. *Lowry v. Lowry*, 541 S.W.2d 128, 130 (Tenn. 1976); *Arnoult v. Griffin*, 490 S.W.2d 701, 710 (Tenn. Ct. App. 1972). The donor cannot retain or reserve any interest in or right to the property or to its control. *Pamplin v. Satterfield*, 196 Tenn. 297, 301, 265 S.W.2d 886, 888 (1954); *Laman v. Craig*, 30 Tenn. App. 353, 362, 206 S.W.2d 309, 313 (1947).

The State presented no evidence that Mr. Cunningham has relinquished or intended to relinquish control over his Corvette. The undisputed evidence is, in fact, to the contrary. On the very day that the law enforcement officers seized the Corvette, Mr. Cunningham had directed his son to pick up that automobile and to have its oil changed. Thus, right up to the time of the seizure, the Corvette was

-7-

being garaged at Mr. Cunningham's house, and Mr. Cunningham exercised control over its use. Accordingly, the State failed to prove by substantial and material evidence that Mr. Cunningham had effectively given his son any interest in the Corvette.

## IV.

We reverse the trial court's decision affirming the Commissioner's conclusion in the forfeiture order that Alan Cunningham was a "co-owner" of the 1986 Corvette. We remand the case to the trial court for the entry of an order remanding the case to the commissioner with directions to return the Corvette to Mr. Cunningham subject to the interests of the First Bank of Rhea County.[6] We also tax the costs of this appeal to the State of Tennessee.

 

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
HENRY F. TODD, P.J., M.S.

_____
BEN H. CANTRELL, JUDGE

_____

[6]The record does not reveal whether the Corvette has been sold. If it has not been sold, it should be returned to Mr. Cunningham. If it has been sold, the proceeds should first be used to satisfy the bank's lien, and the remainder should be paid over to Mr. Cunningham.